[No. H005191. Sixth Dist. July 2, 1990.]

MIDPENINSULA CITIZENS FOR FAIR HOUSING, Plaintiff and Appellant, v.
WESTWOOD INVESTORS et al., Defendants and Respondents.

## COUNSEL

Marer, Marer & Schuck, Gerald Z. Marer and Peter G. Lomhoff for Plaintiff and Appellant.

Matthew A. Coles, Edward M. Chen, Margaret C. Crosby, Alan L. Schlosser, Michael Rawson, Robertson, Alexander, Luther, Esselstein, Shiells & Wright, Jack Robertson, Jon R. Parsons, Brobeck, Phleger & Harrison, Jonathan C. Dickey, A. James Isbester, Harry M. Snyder, Gail K. Hillebrand, Nettie Y. Hoge, Eric W. Wright, Hufstedler, Miller, Kaus & Beardsley, Peter O. Israel, Leora D. Freedman, Julius Levonne Chambers,

Patrick O. Patterson and Theodore M. Shaw as Amici Curiae on behalf of Plaintiff and Appellant.

McPharlin & Mahl, Linda Hendrix McPharlin, Lisa P. Lampros, Hopkins & Carley and Patrick E. Adair for Defendants and Respondents.

OPINION

**BAMATTRE-MANOUKIAN, J.**—Midpeninsula Citizens for Fair Housing (MCFH) sued Westwood Investors and Richard Gregersen, the owners and manager of a Cupertino apartment building, claiming that the rental policy at the apartment complex limiting occupancy to one person per bedroom was discriminatory within the meaning of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.; hereafter Unruh Act.) The trial court entered judgment in favor of the Westwood defendants solely on the basis that MCFH did not have standing to sue under the Unruh Act.

In this appeal MCFH argues that it has standing both under the Unruh Act and under California's unfair competition statute, Business and Professions Code section 17204. ■■ We agree with the trial court that MCFH did not have standing under the Unruh Act. ■■ However, the recent case of *Consumers Union of United States, Inc.* v. *Fisher Development, Inc.* (1989) 208 Cal.App.3d 1433 [257 Cal.Rptr. 151] persuades us that standing is nonetheless proper under Business and Professions Code section 17204. But since that section provides only for injunctive relief, and the one person per bedroom policy challenged by MCFH is no longer in effect at the Westwood apartments, no remedy is available to MCFH and the case is consequently moot.

Because we regard the matter of standing to be an issue of "continuing public interest," we will proceed to address that issue in spite of the mootness of MCFH's case-in-chief. (*John A.* v. *San Bernardino City Unified School Dist.* (1982) 33 Cal.3d 301, 307 [187 Cal.Rptr. 472, 654 P.2d 242].)

BACKGROUND

MCFH is a nonprofit corporation which works to eliminate discriminatory housing practices and to secure equal housing opportunities for all people. MCFH carries out its work by means of educating the community concerning fair housing laws, investigating complaints of discrimination in housing and assisting victims of housing discrimination. It is a membership

organization and receives funding from its members, from grants and from the municipalities and counties it serves. Its membership has varied from 800 to 2,000 over the years. Its service area, which encompasses southern San Mateo County and northern Santa Clara County, includes the City of Cupertino.

Defendants Westwood Investors, a limited partnership, and Richard Gregersen, its general partner (collectively Westwood), are the owners and manager of an apartment complex located in Cupertino and known as The Westwood. The Westwood contains 116 apartments, of which 53 have 2 bedrooms and 63 have 3 bedrooms. Defendants acquired the property in 1982. At that time they instituted a policy that the two-bedroom units could be occupied by no more than two people and the three-bedroom units by no more than three people.

From 1982 through April of 1986, MCFH received seven complaints concerning the one person per bedroom rule at The Westwood.

In September of 1986, MCFH filed its first amended complaint against Westwood, alleging four causes of action.

1) Westwood's occupancy limitation policy violated the Unruh Act (Civ. Code, §§ 51 & 51.2) by discriminating against families with children, since it automatically excluded households comprised of two parents with more than one child or single parents with more than two children;

2) The occupancy policy had a discriminatory impact on Blacks and other non-Whites who tend to have larger families than Whites;

3) The occupancy policy violated the privacy rights of potential renters; and

4) The occupancy policy constituted unfair competition within the meaning of Business and Professions Code section 17200.

MCFH sought compensatory damages, punitive damages, injunctive relief and attorney's fees.

Shortly after the complaint was served, Westwood changed its rental policy. The new policy allows for one person per bedroom and full bathroom.

The issue whether MCFH had standing to sue was severed and tried separately before the court on August 30, 1988. The trial court determined

that MCFH did not have standing under the provisions of the Unruh Act (Civ. Code, § 52), and entered judgment in favor of Westwood. MCFH appeals from that judgment.

## DISCUSSION

MCFH claims three separate bases for standing: 1) As a "person aggrieved" under the Unruh Act, Civil Code section 52, subdivision (c);

2) As a representative of its members and clients under the Unruh Act; and

3) As a person or corporation "acting for the interests of itself, its members or the general public" under Business and Professions Code section 17204.

### I.

*Standing as a "Person Aggrieved" Under the Unruh Act*

The Unruh Act in general prohibits discrimination in the provision of accommodations and services in all business establishments. (Civ. Code, § 51.) Civil Code section 52 sets forth the available remedies. Subdivision (a) of section 52 provides that anyone who engages in discriminatory practices in violation of the provisions of the act may be liable for triple the amount of "actual damages . . . suffered by any person denied the rights provided in section 51 . . . ."

In addition, a civil action to enjoin any alleged discriminatory pattern or practice may be brought by "the Attorney General, any district attorney or city attorney, or any person aggrieved by the pattern or practice." (Civ. Code, § 52, subd. (c).)

MCFH contends that it is an aggrieved party within the meaning of Civil Code section 52. It argues that Westwood's rental policy caused a drain on its limited resources, thus diverting needed funds from important educational and counseling services. For example, a declaration by an employee of MCFH showed that MCFH spent approximately $900 in staff time and expenses investigating claims of discrimination at The Westwood and approximately $2,595 for administrative time and overhead.

Westwood argues that the operating expenses of an organization like MCFH in the course of carrying out its work are not what the act intended

as "actual damages" to compensate a person who has suffered from discriminatory treatment. Basically, Westwood maintains that MCFH is not a "person aggrieved" within the meaning of the act. We agree with Westwood.

The Unruh Act is found in part 2 of the Civil Code, entitled "Personal Rights." Its language strongly suggests that it was intended to provide recourse for those individuals actually denied full and equal treatment by a business establishment. The courts have acknowledged that a cause of action under the Unruh Act is of an "individual nature" (*Koire* v. *Metro Car Wash* (1985) 40 Cal.3d 24, 34 [219 Cal.Rptr. 133, 707 P.2d 195]), and that "the rights protected by the act are enjoyed by all persons, *as individuals.*" (*Martin* v. *International Olympic Committee* (9th Cir. 1984) 740 F.2d 670, 677.)

*Crowell* v. *Isaacs* (1965) 235 Cal.App.2d 755 [45 Cal.Rptr. 566], is a case in point. In *Crowell*, a White couple listed their house for sale and later sued their real estate agent for failing to advertise specifically that the property was available to buyers of all races. The court rejected all of plaintiffs' claims based on the Unruh Act on grounds that plaintiffs were not the persons to which the statutory remedy was extended. "[P]laintiffs have not shown that they are persons entitled to a remedy under the Civil Rights Act. One who violates the Act is liable for damages 'suffered by any person denied the rights' granted by Section 51. That is the right to 'full and equal' facilities and privileges of defendant's business establishment, regardless of race, color or creed. The statute protects those so discriminated against. So far as we can find, all appellate decisions concerning this statute arose in actions brought by persons discriminated against on these grounds." (*Id.* at pp. 757-758.)

Section 52 of the Civil Code was amended after the *Crowell* case to add subdivision (c), providing for a cause of action for injunctive relief in addition to the damages allowed by subdivision (a). As subdivision (c) now reads, such an action may be brought by "the Attorney General, any district attorney or city attorney or any person aggrieved by the [discriminatory] pattern or practice." MCFH contends that the holding in *Crowell* has been abrogated by the addition of subdivision (c) because standing is no longer limited to "person[s] denied the[ir] rights" but includes "any person aggrieved." A review of the legislative history of section 52, however, convinces us that the language "any person aggrieved" in subdivision (c) was not intended to be given the expansive interpretation argued by MCFH.

The Unruh Act was passed in 1959 and provided that any person denied the rights guaranteed by the act could sue for damages. Subdivision (c) of

section 52 of the Civil Code was added in 1976, authorizing the Attorney General to bring an action for injunctive relief against any person or persons engaged in a pattern of discriminatory conduct. (Stats. 1976, ch. 1293, § 2.5, p. 5778) In 1978, the Legislature again amended section 52, providing that a district attorney or city attorney, in addition to the Attorney General, could bring an action under subdivision (c). (Stats. 1978, ch. 1212, § 1, p. 3927.)

At this juncture an ambiguity became apparent. Since Civil Code section 52, subdivion (a) provided a cause of action for damages to the "person denied the rights" under the act, and subdivision (c) authorized only the Attorney General, district attorney or city attorney to bring an action for injunctive relief, the statute appeared to imply that the individual whose rights had been denied under the act could *not* bring an action for injunctive relief. But the California Supreme Court in *Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463, 470 [20 Cal.Rptr. 609, 370 P.2d 313], had allowed an "aggrieved person" to seek injunctive relief under the Unruh Act, even before the statute expressly provided for injunctive relief. To resolve this apparent conflict between statutory and case law, the Legislature, in 1981, once again added to subdivision (c) in order to expressly permit "a person aggrieved by the pattern or practice" to bring suit for preventive relief. (Stats. 1981, ch. 521, § 1; *Selected 1981 California Legislation* (1981) 13 Pacific L.J. 784.)

In light of the history of Civil Code section 52, subdivision (c), we reject MCFH's contention that the Legislature intended, by adding the language "a person aggrieved by the pattern or practice," to confer standing upon an expanded class of plaintiffs whose civil rights had not been personally violated. It appears instead that this language was intended to provide a cause of action for injunctive relief to the same class of plaintiffs as was entitled to damages under subdivision (a).

Cases cited by MCFH tend in fact to bolster the interpretation we adopt. In *Koire* v. *Metro Car Wash, supra,* 40 Cal.3d 24, plaintiff sued several car washes and bars under the Unruh Act, claiming that price and admission discounts offered by those establishments to "ladies only" discriminated against him. MCFH argues that its "damages" of over $3,000 were far greater than those of plaintiff in *Koire,* who was deprived of discounts of $2 or less. But the dollar amount of alleged damages is beside the point. The plaintiff in *Koire,* being a male, was a person directly injured by the policies of the businesses favoring women over men. In addition to having to pay more, "the price differentials made him feel that he was being treated unfairly." (*Id.* at p. 34.) It is evident that MCFH did not similarly experience unfair treatment due to the policy in force at The Westwood.

*Rotary Club of Duarte* v. *Board of Directors* (1986) 178 Cal.App.3d 1035 [224 Cal.Rptr. 213] is likewise unhelpful to MCFH. In that case, Rotary International revoked the charter of the Rotary Club of Duarte because the local club admitted women. The local sued under the Unruh Act and the court found that it had standing as a person aggrieved. Although the local Rotary Club was a corporation rather than an individual, it was nonetheless the victim of the discriminatory "men only" policy enforced by the international organization. As a result of the implementation of that policy, the local club was itself damaged by having its charter revoked. The circumstances here are not comparable. The class of plaintiffs affected by the occupancy policy at the Westwood consisted of prospective tenants with large families who would be disqualified from renting apartments. Assuming that the policy operated in a discriminatory manner in violation of the act, MCFH was not one of those suffering from the unfair treatment.

■  MCFH and the numerous amici in this appeal urge that we apply federal precedent to reach the conclusion that MCFH is a "person aggrieved." They rely principally on the case of *Havens Realty Corp.* v. *Coleman* (1982) 455 U.S. 363 [71 L.Ed.2d 214, 102 S.Ct. 1114], which addressed the scope of standing to sue under the federal Fair Housing Act of 1968 (42 U.S.C. § 3601 et seq.) In *Havens*, suit was brought by several individual plaintiffs and by HOME, a nonprofit membership corporation with the purpose of " 'mak[ing] equal opportunity in housing a reality' " in the metropolitan area of Richmond, Virginia. (*Havens Realty Corp.* v. *Coleman*, *supra*, 455 U.S. at p. 368 [71 L.Ed.2d at p. 222].) HOME claimed that the alleged discriminatory rental practices drained its limited resources, thereby diverting funds from other counseling and referral services. The Supreme Court found that these were sufficient allegations of injury to confer standing under the Fair Housing Act, which required only that a plaintiff meet the constitutional minima of showing an "injury in fact." (*Id.* at p. 372 [71 L.Ed.2d at p. 225].) "As long as [plaintiffs] have alleged distinct and palpable injuries that are 'fairly traceable' to [defendants'] actions, the Art. III requirement of injury in fact is satisfied."[1] (*Id.* at p. 376 [71 L.Ed.2d at p. 227].)

The Supreme Court's interpretation of a federal statute's standing requirements does not determine the scope of standing provided by a California statute. Standing requirements will vary from statute to statute based upon the intent of the Legislature and the purpose for which the particular statute was enacted. In the case of the federal Fair Housing Act, the Supreme Court had determined that Congress intended standing "to extend to

---

[1] Article III of the United States Constitution generally limits the jurisdiction of federal courts to "cases" or "controversies."

the full limits of Art. III" of the Constitution. (*Gladstone, Realtors* v. *Village of Bellwood* (1979) 441 U.S. 91, 103, fn. 9 [60 L.Ed.2d 66, 79, 99 S.Ct. 1601].) Thus traditional "prudential" considerations regarding standing—for instance, that a litigant must assert an injury peculiar to himself or to a distinct group of which he is a part—were deemed waived in cases brought to enforce the provisions of the Fair Housing Act. (*Ibid.*; *Havens Realty Corp.* v. *Coleman, supra*, 455 U.S. at p. 372 [71 L.Ed.2d at p. 225].)

In California, however, the state Legislature has specifically conferred standing to sue under the Unruh Act upon the victims of the discriminatory practices and certain designated others, i.e., district or city attorneys or the Attorney General. (Civ. Code, § 52, subds. (a) & (c); *Crowell* v. *Isaacs, supra*, 235 Cal.App.2d 755; *Koire* v. *Metro Car Wash, supra*, 40 Cal.3d 24.) The California courts have not seen fit to endorse a more expansive interpretation of these standing requirements, and we decline to do so in this case.

Nor are we persuaded by the argument that California courts, which are not constrained by the case or controversy requirement of article III of the United States Constitution, or by the traditional "prudential barriers" to standing, have historically been more liberal in conferring standing upon a wider class of "persons aggrieved" by discriminatory practices. The case of *Stocks* v. *City of Irvine* (1981) 114 Cal.App.3d 520 [170 Cal.Rptr. 724] is illustrative of this point. In that case plaintiffs challenged a city's land use practices on grounds that the practices prevented housing for persons with low and moderate incomes from being constructed in the city. Plaintiffs could not allege they were deprived of any particular potential housing in the city by the operation of the zoning practices. Therefore, under federal standards they would not have had a sufficiently personal and concrete interest in the litigation to give them standing. The California court, however, found that they were "aggrieved" parties because they were persons with low and moderate incomes and thus were members of the class allegedly affected by the zoning ordinances. But this proves nothing for purposes of our case because *Stocks* was not a suit brought under the Unruh Act. And even if it had been, it would be readily distinguishable from our case since MCFH can make no charge here that Westwood's policy discriminated against it or that it was a member of the class discriminated against.

We conclude that MCFH is not a "person aggrieved" within the meaning of the Unruh Act.

## II.

*Representative Standing Under the Unruh Act*

■ Even if it is not recognized as a "person aggrieved," MCFH contends that it is entitled to sue under the Unruh Act as a representative of its members and clients, who *are* allegedly persons aggrieved. MCFH points out that a representative suit, brought by an organization on behalf of its members, is well recognized in California. Our attention is directed to *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117 [109 Cal.Rptr. 724]. In that case a residents' association sued to block the issuance of a conditional use permit for a proposed development in the area where its members lived. The association was held to have standing to sue because it alleged (1) that it was a corporation whose members lived in the affected area and (2) that its members would suffer injury if the challenged project were allowed to proceed.

MCFH argues that it is likewise a corporation whose members, or at least some of whose members, live in the Cupertino area and have households consisting of four or more persons. Thus, conceivably, some of MCFH's members would have been excluded from renting an apartment at The Westwood had any desired to do so.

But MCFH did not demonstrate at trial that any particular member or members of its organization desired to live at the Westwood and would therefore suffer injury by being denied housing there. Nor did it bring forward any particular client who had been refused housing at The Westwood. MCFH claimed only that it had received certain complaints about the occupancy limitation policy at The Westwood. Thus MCFH is not in the same position to represent its members in this lawsuit as the residents' association in *Beverly Glen*, *all* of whose members would in fact be injured by the challenged building project.

Other representative cases cited by MCFH are distinguishable in the same way. For example, in *Raven's Cove Townhomes, Inc.* v. *Knuppe Development Co.* (1981) 114 Cal.App.3d 783 [171 Cal.Rptr. 334], the action was brought against a developer by an association of townhouse owners, all of whom claimed damages to their properties as a result of the developer's negligence. And in *Salton City Area etc. Owners Assn.* v. *M. Penn Phillips Co.* (1977) 75 Cal.App.3d 184 [141 Cal.Rptr. 895], the representative association consisted entirely of property owners who had allegedly been damaged by a fraudulent land sales scheme. Moreover, none of these cases was brought under the Unruh Act. Rather they stand for the general proposi-

tion that if the members of a group individually would have standing to sue, the group itself has standing to sue on their behalf. (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles, supra*, 34 Cal.App.3d at p. 124; Code Civ. Proc., § 382.)

Taking up this theme, MCFH and its amici curiae turn again to federal law. They argue that both the members and the clients of MCFH would have standing individually as "persons aggrieved" under the Fair Housing Act, and should likewise have standing pursuant to the same language in the Unruh Act.[2] Therefore, it is argued, the organization representing them must also have standing.

The United States Supreme Court has interpreted "persons aggrieved" under the federal statute to include not only those directly injured but also those who allege that they were indirectly impacted by the discriminatory practice. Thus standing was allowed to several tenants of an apartment building who were not discriminated against but claimed that the landlord's discriminatory rental policies affected the quality of life in the apartment complex. (*Trafficante* v. *Metropolitan Life Ins.* (1972) 409 U.S. 205 [34 L.Ed.2d 415, 93 S.Ct. 364].) Standing was also extended to plaintiffs who lived in a 12- by 13-block neighborhood which was affected by a realtor's discriminatory steering practices in *Gladstone, Realtors* v. *Village of Bellwood, supra*, 441 U.S. at pp. 111-115 [60 L.Ed.2d at pp.83-86].)

But MCFH did not show here that any of its members live in The Westwood or in the immediate neighborhood surrounding it. And in *Havens*, the Supreme Court cautioned against expanding standing to plaintiffs outside a " 'relatively compact neighborhood' ": "We have not suggested that discrimination within a single housing complex might give rise to 'distinct and palpable injury' [citation] throughout a metropolitan area." (*Havens Realty Corp.* v. *Coleman, supra*, 455 U.S. at p. 377 [71 L.Ed.2d at p. 229].) MCFH's membership spans two counties, an area considerably larger than the metropolitan area contemplated by the court in *Havens*. Furthermore, no individual client who was allegedly victimized by the policies at The Westwood is named or joined in this lawsuit. Thus it is by no means clear that MCFH represents members and clients who are "persons aggrieved" even under the Supreme Court's interpretation of that phrase.

MCFH and its amici curiae argue that the California cases reflect a retreat from strict standing requirements where litigants act in the public

---

[2] Section 810 of the Federal Housing Act provides that a "person aggrieved" is one "who claims to have been injured by a discriminatory housing practice or who believes that he will be irrevocably injured by a discriminatory housing practice that is about to occur . . ." (42 U.S.C. § 3610(a).)

interest. The court in *Beverly Glen* observed that "[i]n recent years there has been a marked accommodation of formerly strict procedural requirements of standing to sue . . . where matters relating to the 'social and economic realities of the present-day organization of society' are concerned." (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles, supra,* 34 Cal.App.3d at p. 122, quoting *Daniels* v. *Sanitarium Ass'n. Inc.* (1963) 59 Cal.2d 602 [30 Cal.Rptr. 828, 381 P.2d 652].) Unquestionably the need for housing qualifies as one of the most pressing "social and economic realities" of our day. Thus, it is argued, the organizational plaintiff which sues to enjoin discrimination in housing is truly litigating in the public interest. (*McKeon* v. *Hastings College* (1986) 185 Cal.App.3d 877, 893 [230 Cal.Rptr. 176].)

Nonetheless we are bound by statutory limitations on standing where they plainly apply. If the Legislature has specifically provided by statute for judicial review under certain circumstances, the inquiry as to standing must begin and end with a determination whether the statute in question authorizes an action by a particular plaintiff. (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles, supra,* 34 Cal.App.3d at p. 123.) In this case the statute limits standing to persons aggrieved and to certain identified public agency plaintiffs. We have no precedent for finding that MCFH has representative standing to sue under the Unruh Act. In any event, as we discuss in the next section, the public interest is served by allowing suits to enjoin discriminatory practices to proceed under the unfair competition statute.

### III.

### *Standing to Sue Under the Unfair Competition Statute, Business and Professions Code Section 17204*

The unfair competition statute provides that "any person acting for the interests of itself, its members or the general public" is entitled to bring an action for injunctive relief from any "unlawful, unfair or fraudulent business practice." (Bus. & Prof. Code, §§ 17204, 17200.)

■ Courts have consistently given a broad interpretation to the standing provisions in Business and Professions Code section 17204. Thus in the case of *Hernandez* v. *Atlantic Finance Co.* (1980) 105 Cal.App.3d 65 [164 Cal.Rptr. 279], a suit for injunction based upon allegedly misleading financing practices was brought by an individual who had not purchased the consumer goods involved, had not applied for credit, and had not been injured or personally aggrieved by the practices attacked. The court allowed a suit for injunction on behalf of the general public under Business and Professions Code section 17204, finding that "the statute [] expressly au-

thoriz[ed] the institution of action by any person on behalf of the general public. The Legislature has provided that suit may be brought by any person acting in his own behalf *or* on behalf of the general public." (*Id.* at p. 72.)

The trial court here did not expressly rule on the issue of standing under the Business and Professions Code section 17204. It found only that MCFH was not a "person aggrieved" under the Unruh Act and "does not have standing to represent this unknown class of alleged victims in a representative capacity under the provisions of the Unruh Act." It is apparent from the record of the proceedings that the court concluded that plaintiff's lack of standing under the Unruh Act precluded it from pursuing its action under the unfair competition statute.

Several months after judgment was entered in favor of Westwood in this case, and MCFH had noticed its appeal, the case of *Consumers Union of United States, Inc.* v. *Fisher Development, Inc.*, *supra*, 208 Cal.App.3d 1433, was decided. That case presented the precise question whether a representative group which is concededly not a "person aggrieved" under the Unruh Act may nonetheless bring an action alleging a violation of that Act under the standing provisions of section 17204 of the Business and Professions Code. ▮▮ *Consumers Union* is on all fours with our case and we believe it provides persuasive precedent for the conclusion that MCFH has standing here under the Business and Professions Code section.

Consumers Union of United States, Inc., is a nonprofit membership organization which seeks to inform and educate the public about consumer goods and services. It brought an action against a housing developer who generally restricted occupancy in a residential subdivision to persons of 55 years or older. Consumers Union alleged that the development did not qualify as a " 'senior citizen housing development' " within the meaning of the Unruh Act; therefore, the developer was in violation of the provisions of the act, which prohibits age discrimination and discrimination against families with children in housing. Consumers Union sought injunctive relief against the developer, alleging standing under Business and Professions Code section 17204. The trial court sustained a demurrer without leave to amend, ruling that Consumers Union was not entitled to invoke the standing provisions of the Business and Professions Code in order to bring suit to enforce the Unruh Act because it was not a "person aggrieved" by the alleged unlawful discrimination, as required by the standing provisions of Civil Code section 52, subdivision (c).

The Court of Appeal reversed, holding that Consumers Union had standing pursuant to Business and Professions Code section 17204 to seek injunc-

tive relief for alleged violations of the Unruh Act regardless of its lack of standing under the act itself. ■■■ In reaching its conclusion, the court relied upon established precedent, finding that "courts have repeatedly permitted persons not personally aggrieved to bring suit for injunctive relief under the unfair competition statute on behalf of the general public, in order to enforce *other* statutes under which such parties would otherwise lack standing." (*Consumers Union of United States, Inc.* v. *Fisher Development, Inc.*, *supra*, 208 Cal.App.3d at p. 1440.)

For example, in *People* v. *McKale* (1979) 25 Cal.3d 626 [159 Cal.Rptr. 811, 602 P.2d 731], a district attorney brought an action pursuant to the unfair competition statute against a mobilehome park, seeking civil penalties and injunctive relief for claimed violations of the Mobilehome Parks Act (Health & Saf. Code, § 18200 et seq.) The Mobilehome Parks Act vested sole authority for bringing enforcement actions in the Commission on Housing and Community Development. Defendants contended that the maintenance of the action under the unfair competition statute impermissably circumvented the standing limitations of the Mobilehome Parks Act.

The Supreme Court held that the "lack of express authorization for a district attorney to prosecute violations of the Mobilehome Parks Act does not preclude prosecution of an action pursuant to applicable Business and Professions Code sections for unfair competition . . . . " (*People* v. *McKale*, *supra*, 25 Cal.3d at p. 633.)

Similarly in *Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197 [197 Cal.Rptr. 783, 673 P.2d 660], a corporation sued under the unfair competition statute to enforce the Sherman Food, Drug, and Cosmetic Law (Health & Saf. Code, § 26000 et seq.) even though it did not have standing under that statute. Again, the Supreme Court found that "any unlawful business practice, including violations of the Sherman law, may be redressed by a private action charging unfair competition in violation of Business and Professions Code section 17200 and 17203." (*Id.* at pp. 210-211.)

Lastly, the *Consumers Union* court discussed the case of *Pines* v. *Tomson* (1984) 160 Cal.App.3d 370 [206 Cal.Rptr. 866]. In that case a nonaggrieved organizational plaintiff brought suit on behalf of the general public under the unfair competition statute to enjoin discrimination in violation of the Unruh Act. Although in *Pines* the organizational plaintiff was joined by two individual aggrieved parties, the opinion of the appellate court makes clear that the plaintiffs suing on their own behalf were not necessary to the

standing of the plaintiff organization to sue on behalf of the general public. (*Id.* at p. 381.)

■ In *Consumers Union,* the argument was raised that if nonaggrieved parties were allowed to enforce the Unruh Act through the unfair competition statute, the stricter standing provisions of the Unruh Act would be rendered meaningless. The Court of Appeal dismissed this argument, noting that the remedies available under the two statutes are not duplicative. Under the Unruh Act, a person denied the rights provided by section 51 can recover treble damages and attorneys' fees. Business and Professions Code section 17204, on the other hand, provides only for injunctive relief. (*Consumers Union of United States, Inc.* v. *Fisher Development, Inc., supra,* 208 Cal.App.3d at p. 1443.)[3]

The court likewise rejected the argument that the addition in 1981 of the language "any person aggrieved" in Civil Code section 52, subdivision (c) impliedly superseded the broad standing provisions of the unfair competition statute in cases involving alleged violations of the Unruh Act. "Respondents would have us interpret the Legislature's extension of standing to private citizens to obtain injunctive relief against discrimination in Civil Code section 52, subdivision (c), as constituting an implied repeal of the preexisting standing provisions of the unfair competition statute. But the latter statute specifically provides that its remedies and provisions are cumulative to those of all other state statutes, '[u]nless otherwise expressly provided . . . . ' (Bus. & Prof. Code, § 17205.) The Unruh Act does *not* contain such an express statement limiting the scope of the broad standing provisions of the unfair competition statute. The Legislature must be presumed to have known of the standing provisions and remedies contained in the unfair competition statute, and the Supreme Court decisions broadly interpreting them, when it enacted Civil Code section 52, subdivision (c); had it wished to limit those provisions in the context of the Unruh Act, it could have done so expressly." (*Consumers Union of United States, Inc.* v. *Fisher Development, Inc., supra,* 208 Cal.App.3d at p. 1443.)

Finally, the court concluded: "We decline to narrow the standing provisions of the unfair competition statute when the Legislature has failed to do

---

[3] We note that attorneys' fees may be available in conjunction with a Business and Professions Code section 17204 action under the private attorney general statute, Code of Civil Procedure section 1021.5. Since the trial court here did not find standing under Business and Professions Code section 17204, it did not address the question of attorneys' fees under Code of Civil Procedure section 1021.5. Consequently, we do not address that issue here. Nothing we say in this opinion, however, is intended to preclude plaintiff fron seeking to show on remand that the action, notwithstanding its dismissal for mootness, has "resulted in the enforcement of an important right affecting the public interest." (Code Civ. Proc., § 1021.5.)

so . . . . [¶] We conclude that [Consumers Union] has standing under the unfair competition statute to bring the instant action for an injunction to enforce the Unruh Act." (*Consumers Union of United States, Inc.* v. *Fisher Development, Inc.*, *supra*, 208 Cal.App.3d at pp. 1443-1444.)

Westwood is unable to distinguish *Consumers Union*, except to point out that in that case the plaintiff did not also seek standing under the Unruh Act. This difference is unimportant, however. The question is whether a representative organization which does not have (or does not claim to have) standing under the Unruh Act is nonetheless entitled, pursuant to Business and Professions Code section 17204, to seek injunctive relief from alleged violations of the act. We agree with *Consumers Union* that the answer to this question must be yes.

■    If the rental policy which MCFH challenges in this lawsuit were still in effect at the Westwood, our conclusion on the standing issue would necessitate that the judgment be reversed in order to allow MCFH the opportunity to pursue injunctive relief under Business and Professions Code section 17204. But here the challenged policy was withdrawn nearly four years ago, and nothing in the record indicates any intention on the part of Westwood to reinstate it. We find under these circumstances that injunctive relief, which is the only remedy available to MCFH, would be meaningless.[4] The action is therefore moot and must be dismissed by the trial court.

### DISPOSITION

We reverse the judgment and remand the matter with directions that the trial court dismiss the action as moot. The trial court may nonetheless entertain a motion by plaintiff for attorneys' fees under Code of Civil Procedure section 1021.5. Each party is to bear its own costs on appeal.

Agliano, P. J., and Capaccioli, J., concurred.

A petition for a rehearing was denied July 31, 1990.

---

[4] We do not intend to imply hereby that injunctive relief is unavailable in all cases where the challenged policy has been withdrawn voluntarily. (See, e.g., *Dept. of Agriculture* v. *Tide Oil Co.* (1969) 269 Cal.App.2d 145, 150 [74 Cal.Rptr. 799].)