**William De WALSHE**

v.

**TOGO'S EATERIES, INC.**

**No. CV 07–2901 GPS (FFMx).**

United States District Court,
C.D. California,
Western Division.

July 21, 2008.

Jayne T. Kaplan, Attorney at law, South Pasadena, CA, for Plaintiff/franchisee, William De Walsche.

Eric L. Yaffe and Iris Figueroa Rosario of Gray, Plant, Mooty, Mooty & Bennett, P.A., Washington, D.C., as well as by Maria C. Rodriguez and Julie I. LaRoe of Seyfarth, Shaw LLP, Los Angeles, CA, for Defendant Togo's Franchised Eateries LLC.

**PROCEEDINGS: Defendant's Motion for Summary Judgment (In Chambers)**

GEORGE P. SCHIAVELLI, District Judge.

On March 24, 2008, Defendant filed a motion for summary judgment, which Plaintiff timely opposed. The Court finds this matter appropriate for decision without oral argument. L.R. 7–15. For the reasons set forth below, Defendant's motion for summary judgment is **GRANTED.**

## I. Background

In February 8, 1996, De Walsche ("Plaintiff") executed a Franchise Agreement ("Agreement") with Togo's Eateries, Inc., formerly known as MTC Management, Inc., ("Defendant"). The Agreement authorized Plaintiff to operate a Togo's restaurant in Rowland Heights, California. According to the terms of the Agreement, Defendant agreed that it would not unreasonably withhold its consent to transfer the franchise to a new franchisee.

Plaintiff put his Togo's franchise on the market in June 2005. In February 2006, Plaintiff entered into escrow for the sale of the franchise to Amir Afshar–Tavana and Kobra Jirsarai (a husband and wife), who Plaintiff alleges are of Middle Eastern origin (hereinafter "Buyers"). Defendant required Plaintiff and Buyers to execute a Rider on the contract for sale (the "Rider") of the Togo's franchise. In the "Buyer's Qualifications" section, the Rider expressly required that the Buyers pass Defendant's English Language Proficiency Assessment ("ELPA"), which "tests whether, in [Defendant's view], an individual has a sufficient command of the English language to serve customers and conduct business with [Defendant], with

suppliers and with other parties." (Def's Exhibits to MSJ at Ex. 1 J ¶ 4.2.)

In May 2006, Buyers both took the ELPA in a Starbucks coffeehouse near the Rowland Heights Togo's franchise. The Buyers failed the ELPA. On May 8, 2006, Defendant wrote to inform Buyers and Plaintiff that they could not approve the sale. (Def's Exhibits to MSJ at Ex. 1 M.)

In December 2006 Plaintiff closed his Togo's franchise. In May 2007, Plaintiff filed suit alleging three causes of action. Plaintiff contends that Defendant breached its contractual obligations and the implied covenant of good faith and fair dealing by: (1) imposing terms and conditions that do not appear in the contract; (2) imposing an inherently unreasonable condition to the approval of the sale of the franchise; (3) administering the ELPA under conditions not conducive to optimum performance; and (4) utilizing a test that does not appropriately measure English proficiency. Additionally, Plaintiff contends Defendant's use of the ELPA violated California's Unruh Civil Rights Act.

Plaintiff seeks costs of suit, reasonable attorneys fees, and other relief. On the Unruh Civil Rights Act claim, Plaintiff also seeks general and special damages according to proof, treble damages pursuant to California Civil Code § 52(a), and a preliminary and permanent injunction enjoining Defendants from utilizing the English proficiency test in the screening of applicants for franchises.

The present motion seeks summary judgment on all claims.[1]

## II. Legal Standard

▆▆▆ The moving party in a summary judgment motion bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party makes this initial showing, the burden shifts to the nonmoving party to "designate specific facts showing there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548 (internal citation omitted). The nonmoving party must produce specific facts that could cause a reasonable juror to disagree as to whether the facts claimed by the moving party are true. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (internal citations omitted).

## III. Analysis

The Court concludes that all three of Plaintiffs claims (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) violation of the Unruh Act fail as a matter of law. Accordingly, Defendant's motion for summary judgment is **GRANTED.**

### A. Breach of Contract

▆▆▆ In order to successfully prosecute his claim for breach of contract, Plaintiff must identify a terra in the contract that Defendant breached. *McDonald v. John P. Scripps Newspaper*, 210 Cal. App.3d 100, 104, 257 Cal.Rptr. 473 (1989). Plaintiff contends that Defendant violated

---

1. In his Opposition, Plaintiff contends the Court should deny the present motion because Defendant's counsel did not comply with the meet-and-confer requirement in Local Rule 7–3. Defendant contends it attempted to confer with Plaintiff on the timing of the motion, but found counsel uncooperative. In any event, the Court finds that any potential violation of Local Rule 7–3 did not prejudice Plaintiff and the Court exercises its discretion to evaluate Defendant's motion on its merits.

paragraph 9.1(b) of the Agreement by unreasonably withholding its consent for the transfer of the Togo's franchise to Buyers. Specifically, this section of the Agreement states:

9.1 *Transfer Standards*

(b) [Defendant's] consent shall not be unreasonably withheld, provided the proposed assignment of transfer be of all of the Licensee's interest herein and substantially all of the business operated pursuant to this Agreement and that the proposed assignee is in [Defendant's] reasonable judgment qualified to provide active supervision over the operation of the business operated hereunder

(Def's Exhibits to MSJ at Ex. 1 A. ¶ 9.1(b).) Plaintiff contends that Defendant's requirement that Buyers pass the ELPA in order to receive its consent is arbitrary and unreasonable. Plaintiff argues that there are innumerable factual questions with regard to the appropriateness of the test and its administration. Moreover, Plaintiff contends that the Rider he and the Buyers signed that expressly imposed the ELPA requirement is invalid because Plaintiff signed it under duress. Plaintiff's arguments fail for four independent reasons.

First, Defendants filed substantial evidence demonstrating that it reasonably required its franchisees to be proficient in both written and spoken English in order to complete required training, understand and comply with corporate operation instructions, communicate with suppliers, and interact with customers. In light of this showing, the burden shifts to Plaintiff to demonstrate that there are factual issues regarding the reasonableness of Defendant's company-wide ELPA requirement. Plaintiff attempts to make this showing by arguing that the ELPA misjudged the Buyers' English proficiency because (1) the Buyers English proficiency had been sufficient in prior commercial contexts, and (2) the requirement that the Buyers take the ELPA in a crowded Starbucks was prejudicial.[2] However, these contentions are undercut by one of the Buyer's repeated need to use an interpreter during her deposition and both Buyers' testimony that taking the test in the Starbucks presented no special difficulty. Considering these facts and the undisputed facts in the record, the Court finds that no reasonable jury could find Defendant's application of the ELPA policy was unreasonable. *See Burger King Corp. v. Ashland Equities, Inc.*, 217 F.Supp.2d 1266, 1276–77 (S.D.Fla.2002) (granting summary judgment in favor of a franchisor where a franchisee claimed the franchisor had unreasonably withheld consent to a sale); *Perez v. McDonald's Corp.*, 60 F.Supp.2d 1030, 1035 (E.D.Cal.1998) (same). While this is a sufficient basis for granting Defendant's motion for summary judgment on the breach of contract claim, additional bases are discussed for the sake of completeness.

Second, paragraph 9.1(a) of the Agreement provides a separate basis through which Defendant could impose the ELPA requirement on any transfer. This provision states in the relevant part: "At the *absolute discretion* of [Defendant], [it] may require the assignee to enter into, in lieu of the prior form of Franchise Agreement,

---

**2.** Plaintiff also submitted the "expert" declaration of psychologist Jane Lewis, which opined the ELPA was not a fair test of English proficiency. Defendant objects to the consideration of this declaration because this expert was first disclosed on April 4, 2008, only sixty-seven days before the original trial date of June 10, 2008. Because this disclosure is untimely under Federal Rule of Civil Procedure 26(a)(2)(C), the Court SUSTAINS Defendant's objection and STRIKES this declaration and all argument based upon it.

[Defendant's] then current standard from of 'Togo's Eatery' Franchise Agreement." (Def's Exhibits to MSJ at Ex. 1 A. ¶ 9.1(a)) (emphasis added). Defendant was therefore entitled to impose the ELPA requirement for qualifying Buyers in the proposed sale at issue because the undisputed evidence shows Defendant's "then current" Franchise Agreement in 2006 included the ELSA requirement.

Third, paragraph 2.1 of the Agreement provides that Plaintiff agreed to follow Defendant's "system requirements relative to . . . operations and all other aspects of the conduct of the 'Togo's Eatery' business and to accept such requirements as an integral aspect of the rights licensed herein." (*Id.* at Ex. 1A ¶ 2.1). Defendant contends that, pursuant to this provision, Plaintiff agreed that all purchasers of Togo's franchises, including Buyers, must successfully complete to the ELPA. (Def's Exhibits to MSJ at Ex. 1 E § 7) (a 2001 company manual setting forth the ELPA requirement); (*see id.* at Ex. 1C) (the ELPA requirement itself, effective November 11, 2005). Plaintiff did not address this issue in his Opposition, though he separately argued that the ELPA was not required in the Agreement. The Court finds paragraph 2.1 undercuts Plaintiff's position. Thus, based on this unopposed showing, the Court finds Plaintiff had agreed that any proposed transferee of his franchise would need to meet the ELPA requirement.

 Fourth, Plaintiff and the Buyer expressly agreed to the ELPA requirement in the Rider to the contract for sale. Plaintiff contends the Rider is not binding because (1) it is a modification of the Franchise Agreement that is invalid for lack of consideration, and (2) Plaintiff signed the Rider under "duress." As an initial matter, the Rider is an addendum to the contract for sale of the franchise between Plaintiff and Buyer. Although Defendant is a third-party beneficiary of the Rider, it is not a signatory or party to it. Additionally, the Rider required additional consideration in the form of representations and disclosures of information between the parties to the Rider and the third-party beneficiary, Defendant. In light of these circumstances, Plaintiff's first challenge to the Rider fails. As to the "duress" argument, the Court finds Plaintiff failed to carry his burden on this claim for invalidity. Specifically, Plaintiff failed to show there were issues of fact that could lead a reasonable jury to conclude that Defendant's requirement that he execute the Rider in order to transfer his franchise constituted a "wrongful act" and that Plaintiff had no reasonable alternative but to execute the Rider. *See Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 469 (9th Cir.1987) (setting forth requirements for showing economic duress). Additionally, Buyers agreed to the Rider; and Plaintiff lacks standing to challenge their express consent to be bound by the ELPA requirement for the benefit of Defendant.

In light of the four independent grounds discussed above, Defendant is entitled to summary judgement on the breach of contract claim.

## B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant contends Plaintiff's implied covenant of good faith and fair dealing claim fails as a matter of law because the terms of the Agreement provided Defendant with discretion to impose the ELPA agreement. The Court agrees.

 Under California law, "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 373, 6 Cal.

Rptr.2d 467, 826 P.2d 710 (1992) (citations omitted). In other words, if conduct is permitted under the express terms of a contract it does not violate the covenant of good faith. This rule is of special significance where the terms of the contract vest "uncontrolled discretion" in one party of the contract because this discretion removes any role for the implied covenant of good faith, making it irrelevant. *See Flight Concepts Ltd. Partnership v. Boeing Co.*, 38 F.3d 1152, 1157 (10th Cir.1994) (finding the Kansas implied covenant of good faith was inapplicable where the express terms of the contract provided one party with "uncontrolled discretion"); *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 506 (Colo.1995) (applying the same principle under Colorado law).

 In the present case, the express terms of paragraph 9.1(a) in the Agreement provided Defendant with "absolute discretion" to require that Buyers agree to the terms of its "then current" franchise agreement, which included the ELPA requirement. Accordingly, the Court finds the implied covenant of good faith and fair dealing is inapplicable and Plaintiff's claim under it fails as a matter of law.

### C. Violation of the Unruh Act

The Unruh Act generally "prohibits discrimination in the provision of accommodations and services in all business establishments." *Midpeninsula Citizens for Fair Hous. v. Westwood Investors*, 221 Cal. App.3d 1377, 1382, 271 Cal.Rptr. 99 (1990) (citing Cal. Civ.Code § 51). Specifically, Cal. Civ.Code § 51(b) lists the potential class members protected:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

 This Act is "to be liberally construed with a view to effectuating the purposes for which it was enacted and to promote justice." *Rotary Club of Duarte v. Bd. of Directors of Rotary Int'l*, 178 Cal.App.3d 1035, 1046, 224 Cal.Rptr. 213 (1986) (citing *Koire v. Metro Car Wash*, 40 Cal.3d 24, 28, 219 Cal.Rptr. 133, 707 P.2d 195 (1985)). The California Supreme Court explained that "the language of the statute encompasses not solely access to business establishments, but also treatment of patrons." *Angelucci v. Century Supper Club*, 41 Cal.4th 160, 174, 59 Cal. Rptr.3d 142, 158 P.3d 718 (2007). Section 52 establishes exactly who can enforce this act, including the Attorney General, any district or city attorney or "any person aggrieved by the conduct." Cal. Civ.Code 52(c).

Plaintiff alleges that Defendant's use of the ELPA is discriminatory and therefore violates California's Unruh Act. While admitting that he was not himself the target of direct discrimination, Plaintiff contends that Defendant's discriminatory conduct towards Buyers and others entitles him to damages and an injunction prohibiting Defendant from utilizing the ELPA in qualifying franchisees.

 Defendant contends it is entitled to summary judgment on this claim because Plaintiff lacks standing.[3] Specifical-

---

**3.** Defendant previously filed a motion for judgment on the pleadings ("Rule 12(c) motion") on this claim in which it alleged that Plaintiff lacked standing. The Court denied Defendant's motion because, under the forgiving standard for Rule 12(c) motions, it was possible that Plaintiff could allege facts sufficient to demonstrate his standing. This does

ly, Defendant contends that Plaintiff is not a "person aggrieved" by the allegedly discriminatory conduct because the Buyers themselves expressly stated at their depositions that Defendant did not discriminate against them. (Def's Exhibits to MSJ at Exs. 2 D 38:9–14; 2 E 56:13–15.) Thus, because Plaintiff cannot demonstrate he was "aggrieved" by any discriminatory conduct, he lacks standing to pursue his claim under the Unruh Act.[4]

Accordingly, Defendant is entitled to summary judgment on this claim.[5]

## IV. Conclusion

Thus, because Defendant is entitled to summary judgment on all three of his claims, its motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

not, however, foreclose Defendant from receiving summary judgment on this claim because both the record and the standard for evaluating the present motion are different.

4. In fact, the Unruh Act appears inapplicable to this case in light of Buyers' testimony. *See Midpeninsula*, 221 Cal.App.3d at 1383, 271 Cal.Rptr. 99 (stating that the Unruh Act is "intended to provide recourse for individuals actually denied full and equal treatment by a business establishment.")

5. Furthermore, Plaintiff failed to demonstrate his standing to represent individuals other than Buyers who were subject to Defendant's allegedly discriminatory ELPA requirement.