[No. D050881. Fourth Dist., Div. One. Nov. 18, 2008.]

STEVEN SURREY, Plaintiff and Appellant, v.
TRUEBEGINNINGS, LLC, et al., Defendants and Respondents.

---

## COUNSEL

The Rava Law Firm and Alfred G. Rava for Plaintiff and Appellant.

Marc E. Angelucci for Los Angeles Chapter of the National Coalition of Free Men, San Diego Chapter of the National Coalition of Free Men, California Men's Centers and Men's Legal Center as Amici Curiae on behalf of Plaintiff and Appellant.

Payne & Fears, Daniel L. Rasmussen and Julie J. Bisceglia for Defendants and Respondents.

Deborah J. La Fetra and Timothy Sandefur for Pacific Legal Foundation as Amicus Curiae on behalf of Defendants and Respondents.

---

## OPINION

**McINTYRE, J.**—The critical issue in this appeal is whether someone who presents himself or herself to a business with the intent of purchasing its services or products, but becomes aware of that business's practice of charging different amounts for such services or products based on gender and thereafter does not purchase those services or products, is aggrieved by that practice so as to have standing to sue for violations of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.; the Act) and the Gender Tax Repeal Act of 1995 (Civ. Code, § 51.6; the Gender Tax Repeal Act). (All further undesignated statutory references are to the Civil Code.) In a case of first impression in California, we answer this question in the negative and adopt a bright-line rule that a person must tender the purchase price for a business's services or products in order to have standing to sue it for alleged discriminatory practices relating thereto.

### FACTUAL AND PROCEDURAL BACKGROUND

In November 2003, TrueBeginnings, LLC, began operating an online matchmaking service, True.com (referred to collectively with TrueBeginnings, LLC, and its parent company, HDVE, LLC, herein as TrueBeginnings). The service was very successful, but it had a disproportionately high percentage of

male patrons. In November 2004, TrueBeginnings sought to rectify this imbalance by offering certain free services to women who joined. In early May 2005, Steven Surrey visited TrueBeginnings's Web site with the intent of utilizing its services; after discovering the discrepancy in its charges, he did not, however, subscribe to or pay for its services.

Surrey thereafter filed this action in San Diego Superior Court "individually and on behalf of the general public," alleging in part that TrueBeginnings's differential pricing for its services violated the Act and the Gender Tax Repeal Act. TrueBeginnings moved for summary judgment on various grounds, including that Surrey was not entitled to sue because he was never "denied" the rights protected under the Act or the Gender Tax Repeal Act. Surrey admitted that he had never subscribed to, or paid for, TrueBeginnings's services, but argued that neither was a prerequisite to his assertion of claims under those statutes.

The court granted TrueBeginnings's summary judgment motion. Preliminarily, it noted that, in light of the undisputed evidence that the discount program ended in May 2005, Surrey's request for injunctive relief was moot. As to Surrey's damages claims, the court concluded that he lacked standing to sue under the Act or the Gender Tax Repeal Act because he had never requested or paid for TrueBeginnings's services. Surrey contends that the superior court's conclusion was in error; we disagree and affirm the judgment in TrueBeginnings's favor.

## DISCUSSION

### 1. *General Principles Regarding Standing*

In general, a named plaintiff must have standing to prosecute an action. (Code Civ. Proc., § 367 [requiring that an action "be prosecuted in the name of the real party in interest, except as otherwise provided by statute"].) The existence of standing generally requires that the plaintiff be able to allege injury, i.e., an invasion of his legally protected interests. (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175 [59 Cal.Rptr.3d 142, 158 P.3d 718] (*Angelucci*); 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 862, p. 320.) The focus of the standing inquiry is on the plaintiff, not on the issues he or she seeks to have determined; he or she must have a special interest that is greater than the interest of the public at large and that is concrete and actual rather than conjectural or hypothetical. (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1000–1001 [24 Cal.Rptr.3d 474]; *Holmes v. California Nat. Guard* (2001) 90 Cal.App.4th 297, 314–315 [109 Cal.Rptr.2d 154].) The prerequisites for standing to assert statutorily based

causes of action are to be determined from the statutory language, as well as the underlying legislative intent and the purpose of the statute. (*Midpeninsula Citizens for Fair Housing v. Westwood Investors* (1990) 221 Cal.App.3d 1377, 1385–1386 [271 Cal.Rptr. 99].)

### 2. *The Anti-discrimination Statutes*

Pursuant to the Act, "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (§ 51, subd. (b).) More specifically, the Gender Tax Repeal Act addresses gender-based price discrimination, providing that "[n]o business establishment of any kind whatsoever may discriminate, with respect to the price charged for services of similar or like kind, against a person because of the person's gender." (§ 51.6, subd. (b); see *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24 [219 Cal.Rptr. 133, 707 P.2d 195] [recognizing that gender-based price discounts also violate the Act].)

■ To further the legislative policy of eliminating improper discrimination by business establishments in California, section 52 authorizes certain individuals to bring civil actions for violations of the Act or the Gender Tax Repeal Act. In this regard, it provides "[w]hoever denies, aids or incites a denial, or makes any discrimination or distinction [in violation of the Act or the Gender Tax Repeal Act], is liable for each and every offense for the actual damages," possible treble damages, and attorney fees suffered "by any person denied the rights provided [therein]." (§ 52, subd. (a); see also § 52, subd. (c) [authorizing an "aggrieved" person to sue for injunctive or other preventive relief].) The question presented here is whether Surrey qualifies as such a person, thus entitling him to sue.

### 3. *Surrey's Standing to Sue*

■ Citing precedents holding that the Act must be liberally construed to further its intended purpose of eliminating improper discriminatory business practices, Surrey argues that he has standing to sue TrueBeginnings even though he never subscribed to or utilized its online services. His argument, however, is belied by the language of section 52, subdivision (a), which bestows standing to sue only on those persons whose rights under the Act or the Gender Tax Repeal Act have been "denied." The mere fact that Surrey became aware TrueBeginnings was offering a discount policy for women subscribers at the time he accessed its Web site did not constitute a denial of his antidiscrimination rights under those statutes. Since Surrey did not

attempt to subscribe to TrueBeginnings's services, his interest in preventing discrimination is arguably no greater than the interest of the public at large.

■ Moreover, the cases interpreting the Act have consistently held that an individual plaintiff has standing to bring claims thereunder only if he or she *has been the victim of the defendant's discriminatory act.* (*Midpeninsula Citizens for Fair Housing v. Westwood Investors, supra,* 221 Cal.App.3d at p. 1383 [determining that standing under the Act extends only to persons "actually denied full and equal treatment by a business establishment"].) For example, in *Midpeninsula,* a nonprofit corporation that worked to eliminate housing discrimination brought suit under the Act against a landlord whose rental policies it alleged were discriminatory. (221 Cal.App.3d at p. 1380.) The trial court entered judgment in favor of the landlord after finding that the nonprofit corporation lacked standing to sue, a finding that was upheld on appeal. The appellate court recognized that standing under the Act was conferred only on "the victims of the discriminatory practices and certain designated others, i.e., district or city attorneys or the Attorney General" and rejected the nonprofit corporation's argument that the statutory language and purpose supported a more expansive interpretation as to those entitled to sue. (221 Cal.App.3d at p. 1386.)

Similarly, in *Orloff v. Hollywood Turf Club* (1952) 110 Cal.App.2d 340 [242 P.2d 660], the plaintiff was ejected from a racetrack and was told he would not be admitted in the future. He sued under a predecessor to the Act, seeking damages for his nonadmission on each day the track was open even though he did not seek admission on any of those days. The appellate court upheld a judgment entered in favor of the racetrack after the superior court sustained a demurrer to the plaintiff's complaint, finding that the plaintiff's failure to present himself and to tender the ticket price was fatal to his claim. (*Orloff,* at pp. 342–343; cf. *Hales v. Ojai Valley Inn & Country Club* (1977) 73 Cal.App.3d 25, 28, 30 [140 Cal.Rptr. 555] [holding the plaintiff who was denied service at a restaurant because he was not wearing a tie, even though the restaurant was serving female patrons who were wearing informal attire at that same time, properly stated a claim under the Act].)

*Weaver v. Pasadena Tournament of Roses* (1948) 32 Cal.2d 833 [198 P.2d 514] provides analogous support for the conclusion that Surrey lacks standing to sue under the Act or the Gender Tax Repeal Act. There, the plaintiffs brought an action " 'on behalf of themselves and all others similarly situated' " for damages as a result of their inability to get tickets to the Rose Bowl football game as a result of the fact that the defendants made far fewer tickets available for sale than previously advertised. (32 Cal.2d at p. 836.) The California Supreme Court rejected the plaintiffs' argument that all individuals who waited in line to buy tickets but were unable to do so were

similarly situated regardless of whether each had stood in line, demanded admittance to the game, and tendered the price of a ticket. (*Ibid.*; see also *Bartlett v. Hawaiian Village, Inc.* (1978) 87 Cal.App.3d 435, 438–439 & fn. 6 [151 Cal.Rptr. 392] [upholding the denial of class certification in an action under the Act for the defendant's alleged discrimination in admitting patrons to its bath house because individual issues, including whether each individual plaintiff had presented himself or herself for admission at the bath house and had been denied entry, predominated and thus the proposed class did not have the requisite community of interest].)

Notwithstanding these authorities (and others like them), Surrey proffers the California Supreme Court's recent decision in *Angelucci* as support for the existence of standing on his part in this case. A review of the decision in that case, however, shows that Surrey's reliance is misplaced.

There, the male plaintiffs patronized a nightclub that charged higher admission fees for men than it did for women and thereafter brought suit under the Act and the Gender Tax Repeal Act. (*Angelucci, supra*, 41 Cal.4th at pp. 164–165.) The superior court granted a motion for judgment on the pleadings in favor of the nightclub because the plaintiffs' complaint failed to allege that they had demanded equal treatment and the Court of Appeal affirmed. The California Supreme Court granted review and reversed, finding that the plaintiffs were required to allege only that they had presented themselves at the nightclub and paid the discriminatory admission price to establish their standing to sue. (*Angelucci, supra*, 41 Cal.4th at pp. 164, 170, 173, 175–176.)

■ The presumed facts of *Angelucci*, based on the plaintiffs' allegations that they had paid the price for admission to the nightclub, render it inapposite here, wherein Surrey concedes that he did not subscribe to TrueBeginnings's services. Moreover, the California Supreme Court's acknowledgement in *Angelucci* that " 'a plaintiff cannot sue for discrimination in the abstract, but must actually suffer the discriminatory conduct' " is fatal to Surrey's position here. (*Angelucci, supra*, 41 Cal.4th at pp. 165, 175.) ■ Because he did not attempt to or actually subscribe to TrueBeginnings's services, Surrey did not suffer discrimination in any sense other than "in the abstract." Thus, in accordance with *Angelucci* itself, he lacks standing to seek relief (whether damages or injunctive relief) for violations of the Act and the Gender Tax Repeal Act. Because Surrey lacks standing to sue, his alternative argument that the superior court erred in finding his request for injunctive relief was moot is itself moot.

## DISPOSITION

The judgment is affirmed. TrueBeginnings is entitled to recover its costs on appeal.

McConnell, P. J., and Haller, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 25, 2009, S169370. Kennard, J., was of the opinion that the petition should be granted.