**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT E. WHITE, an individual, and all others similarly situated, *Plaintiff-Appellant,*<br><br>v.<br><br>SQUARE, INC., a Delaware corporation, *Defendant-Appellee.* | No. 16-17137<br><br>D.C. No. 3:15-cv-04539-JST<br><br>ORDER CERTIFYING QUESTIONS TO THE CALIFORNIA SUPREME COURT |

Filed June 7, 2018

Before: Richard A. Paez and Sandra S. Ikuta, Circuit Judges, and Eric N. Vitaliano,* District Judge.

---

* The Honorable Eric N. Vitaliano, United States District Judge for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

---

**Certified Question to California Supreme Court**

The panel certified the following questions of state law to the Supreme Court of California:

> Does a plaintiff suffer discriminatory conduct, and thus have statutory standing to bring a claim under the Unruh Act, when the plaintiff visits a business's website with the intent of using its services, encounters terms and conditions that deny the plaintiff full and equal access to its services, and then departs without entering into an agreement with the service provider? Alternatively, does the plaintiff have to engage in some further interaction with the business and its website before the plaintiff will be deemed to have been denied full and equal treatment by the business?

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

William McGrane, McGrane PC, San Francisco, California; Myron Moskovitz, Moskovitz Appellate Team, Piedmont, California; for Plaintiff-Appellant.

Colleen Bal and Joshua A. Baskin, Wilson Sonsini Goodrich & Rosati P.C., San Francisco, California, for Defendant-Appellee.

**ORDER**

We ask the California Supreme Court to resolve an important open question of state law. To have statutory standing under the Unruh Act, a plaintiff must suffer discriminatory conduct. We need guidance, however, in applying the rules for statutory standing in the internet context, in order to determine whether a plaintiff has standing to sue an internet-based service provider after the plaintiff visits the business's website but refuses to accept terms of service that deny the plaintiff full and equal access. The California Supreme Court's guidance is especially necessary in light of current case law, which is divided on the question whether plaintiffs who present themselves to a business with an intent to use its services and encounter an exclusionary policy must nevertheless patronize the business in order to satisfy statutory standing. Accordingly, we certify the following questions:

> Does a plaintiff suffer discriminatory conduct, and thus have statutory standing to bring a claim under the Unruh Act, when the plaintiff visits a business's website with the intent of

using its services, encounters terms and conditions that deny the plaintiff full and equal access to its services, and then departs without entering into an agreement with the service provider? Alternatively, does the plaintiff have to engage in some further interaction with the business and its website before the plaintiff will be deemed to have been denied full and equal treatment by the business?

Our phrasing of the questions should not restrict the Court's consideration of the issues involved. The Court may rephrase the questions as it sees fit in order to address the contentions of the parties. If the Court agrees to decide these questions, we agree to accept its decision. We recognize that the Court has a substantial caseload, and we submit these questions only because of their significance to claims brought under the Unruh Act.

I

Square, Inc. provides an internet-based service that allows individuals or merchants to "accept electronic payments without themselves directly opening up a merchant account with any Visa or MasterCard member bank." Square's seller agreement states that "[b]y creating a Square Account, you . . . confirm that you will not accept payments in connection with the following businesses or business activities: . . . (28) bankruptcy attorneys or collection agencies engaged in the collection of debt."[1] Square does not charge a

---

[1] Square's seller agreement also includes an arbitration clause that requires disputes to be resolved through individual, non-class arbitration.

subscription fee or admission fee, but charges a specified percentage of each transaction plus a flat fee per each transaction for its service. *See Square Reader For Magstripe*, Squareup.com, https://squareup.com/reader (last visited Mar. 27, 2018).

According to his second amended complaint, Robert White, a bankruptcy attorney, "formed the strong, definite and specific intent" to become a subscriber to Square. White stated that before attempting to subscribe, he familiarized himself with the issues arising from Square's seller agreement by reviewing a related case, *shierkatz RLLP v. Square, Inc.*[2] White then visited and reviewed the Square website, including the seller agreement. White alleges that he refused to click the link marked "Continue" on Square's website, which would have subjected him to the terms of the seller agreement, because he intended to use the service for his bankruptcy practice.[3]

Instead, White sued Square in October 2015, alleging Square's seller agreement discriminated against bankruptcy attorneys in violation of the Unruh Act's ban on occupational

---

[2] In *shierkatz RLLP v. Square, Inc.*, a bankruptcy law firm entered into Square's seller agreement, but Square terminated the agreement when it learned that the firm was accepting payments in connection with its bankruptcy practice, in violation of the terms of service. No. 3:15-cv-02202-JST, 2015 WL 9258082, at *1 (N.D. Cal. Dec. 17, 2015). The firm sued Square under the Unruh Act for unlawful discrimination on the basis of occupation. *Id.* The district court compelled arbitration pursuant to the terms of the seller agreement. *Id.* at *12–13.

[3] White cites a letter from Square to shierkatz RLLP that stated "[y]our client's signing up for Square's service with the intent to violate the applicable terms of service would be fraudulent."

discrimination.  White sought to form a class of bankruptcy attorneys and other persons who had been "dissuaded from either (i) hitting the Continue button [to accept the seller's agreement] on [Square's] website or (ii) otherwise attempting in any other possible manner to become customers of [Square]" due to Square's ban on using its service in a bankruptcy practice.  After this suit was filed, White's counsel visited Square's website on a daily basis, presented White's first and second amended complaints to Square, and sent a letter to Square demanding that it allow White to use Square's service to facilitate his bankruptcy practice.

The district court dismissed White's first amended complaint without prejudice on the ground that White lacked statutory standing to sue Square pursuant to the Unruh Act, and then dismissed White's second amended complaint with prejudice on the same ground.  The district court reasoned that White had not attempted to obtain services from Square, and under *Surrey v. TrueBeginnings*, 168 Cal. App. 4th 414, 418 (2008), mere awareness of Square's discriminatory policies was insufficient to confer standing.  After the district court denied White's subsequent motion for reconsideration and motion for a new trial, White appealed.

On appeal, White first argued that neither the district court nor we had jurisdiction under Article III of the U.S. Constitution because White had not suffered a concrete and particularized injury as defined in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992))).  In the alternative, White argued that the district

court erred in holding that he lacked standing under the Unruh Act.

We conclude that White meets the constitutional standing requirements. White alleged that he sought to use Square's services, but was unable to do so because of its discriminatory policy against bankruptcy attorneys. Because "discrimination itself . . . can cause serious non-economic injuries to those persons who are denied equal treatment solely because of their membership in a disfavored group," *Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984), and "state law can create interests that support standing in federal courts," *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001), White's allegations satisfy Article III's requirements for a concrete and particularized injury. Therefore we must address White's alternative argument, on which we seek the California Supreme Court's direction.

## II

California's Unruh Civil Rights Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The California Supreme Court has held that the "identification of particular bases of discrimination - color, race, religion, ancestry and national origin - [in the current version of the act] . . . is *illustrative rather than restrictive*." *Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721, 725 (1982) (quoting *In re Cox*,

3 Cal. 3d 205, 216 (1970)). In other words, "the protection against discrimination afforded by the Unruh Act applies to 'all persons,' and is not reserved for restricted categories of prohibited discrimination." *Id.* at 736. In this vein, *Marina Point* cited opinions of the California Attorney General as establishing that the Act applied to "exclusionary policies" directed against members of a "particular occupation." *Id.* (citing 58 Ops. Cal. Atty. Gen. 608, 613 (1975)). California Courts of Appeal have interpreted this reference to mean that the Unruh Act prohibits arbitrary occupational discrimination. *Sisemore v. Master Fin., Inc.*, 151 Cal. App. 4th 1386, 1405–06 (2007); *Long v. Valentino*, 216 Cal. App. 3d 1287, 1297 (1989).

A plaintiff must have statutory standing to bring a claim under the Unruh Act. Cal. Civ. Proc. Code § 367. The California Supreme Court has clarified that "a plaintiff cannot sue for discrimination in the abstract, but must actually suffer the discriminatory conduct." *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 175 (2007). In order to have standing under the Act, a plaintiff must have "been the victim of the defendant's discriminatory act," meaning that the plaintiff was "actually denied full and equal treatment by a business establishment." *Id.* If a business establishment has a policy of unequal treatment (such as a policy of gender-based price discounts), the discriminatory policy must be "*applied* to the plaintiff." *Id.*

While the California Supreme Court has clearly articulated the statutory standing rule, state appellate courts have not always been consistent in applying it to specific circumstances. In the only California Supreme Court case addressing this issue, *Angelucci v. Century Supper Club*, the Court made clear that at a minimum, a plaintiff who pays a

discriminatory fee has suffered discriminatory conduct for purposes of standing. *Id.* In *Angelucci,* male patrons of a nightclub sued the club for charging men an admission fee higher than that charged to women. *Id.* at 165. *Angelucci* explained that "a business establishment's policy of affording price discounts to female patrons purely on the basis of gender ordinarily constitutes unlawful discrimination against male patrons within the meaning of the Act," and male patrons "were injured within the meaning of the Act when they presented themselves for admission and were charged the nondiscounted price." *Id.* at 173.

Turning to the specific issue raised by that case, *Angelucci* ruled that plaintiffs who patronize a business and are subjected to discriminatory treatment need not also demand equal treatment in order to have statutory standing. *Id.* at 169. In explaining its reasoning, *Angelucci* discussed some early cases under predecessors to the Unruh Act. For instance, courts held that California's anti-discrimination laws were violated "when African-American ticket holders were admitted to a movie theater or racetrack clubhouse or gained access to a soda fountain, but, because of their race, were restricted to a segregated or otherwise substandard area." *Id.* (citing *Suttles v. Hollywood Turf Club*, 45 Cal. App. 2d 283, 287 (1941); *Hutson v. The Owl Drug Co.*, 79 Cal. App. 390, 392 (1926); *Jones v. Kehrlein*, 49 Cal. App. 646, 651 (1920)). Similarly, "an African-American family seeking to purchase a home" who were not told about "eligible homes in a White-majority neighborhood" would have suffered actionable discrimination. *Id.* at 170. *Angelucci* pointed out that "[i]t would be absurd to conclude that such civil rights act violations occurred only when the African-American patrons expressly demanded that their treatment be equivalent to that accorded the White patrons in

those situations." *Id.* at 169–70. *Angelucci* also recognized certain early cases that "arose in the context of a business establishment's asserted discriminatory *exclusion* of patrons and stand at most for the proposition that persons who were not patrons of a business establishment or who did not present themselves for service or access as a patron and tender the price of admission did not adequately allege injury under the predecessor to the Act." *Id.* at 170. For instance, a state appellate court held that a plaintiff ejected from a racetrack could not seek damages "for days on which he had not presented himself for admission and tendered the price of a ticket" because "the defendant had no duty to the plaintiff under the Act until the plaintiff tendered either an admission ticket or the price of admission." *Id.* at 171 (citing *Orloff v. Hollywood Turf Club*, 110 Cal. App. 2d 340, 342–43 (1952)).

Although *Angelucci* ruled on a discrete question not at issue here, it is reasonable to read *Angelucci* as holding that plaintiffs lack statutory standing to bring a claim for discrimination if they neither present themselves nor pay a fee to the allegedly discriminatory business. However, the California Supreme Court has not directly addressed a situation where persons present themselves for service at a business establishment, but are deterred by the business's discriminatory policy from using or paying for the business's services or products. We therefore turn to the opinions of the state appellate courts.

The appellate courts have taken different approaches to determining whether persons who have not patronized a business have standing to raise an Unruh Act claim. One state appellate court adopted "a bright-line rule that a person must tender the purchase price for a business's services or products in order to have standing to sue it for alleged

discriminatory practices relating thereto." *Surrey*, 168 Cal. App. 4th at 416. In *Surrey*, an internet matchmaking service offered free services to women who joined. *Id.* at 417. A male plaintiff visited the website "with the intent of utilizing its services," but "after discovering the discrepancy in its charges," he declined to "subscribe to or pay for its services." *Id. Surrey* held that the plaintiff's awareness of the discount policy "at the time he accessed its website did not constitute a denial of his anti-discrimination rights." *Id.* at 418. Because the plaintiff "did not attempt to or actually subscribe to" the matchmaker's services, he was not subject to the business's discriminatory pricing scheme, and therefore lacked standing to seek relief for violation of the Unruh Act. *Id.* at 420. The court distinguished *Angelucci* on the ground that the plaintiffs in that case had "paid the price for admission to the night club." *Id. Surrey* therefore, indicates that plaintiffs must actually pay the discriminatory charge for services in order to have standing to bring an Unruh Act claim; it is not enough for plaintiffs to present themselves for service, encounter the discriminatory policy, and turn away.

Other appellate courts have not adopted such a bright-line rule, and instead suggest that plaintiffs may have standing so long as they have presented themselves for service and been deterred from patronizing the business due to its discriminatory policy. In *Reycraft v. Lee*, a disabled plaintiff visited her sister-in-law at a mobile home park and discovered that the community pool was not compliant with the Americans with Disability Act (ADA), which also constituted a violation of the California Disabled Persons Act

(DPA).[4] 177 Cal. App. 4th 1211, 1224–26 (2009). The court declined to adopt the ADA's standing rule, i.e., that "a plaintiff acquires standing and suffers an injury as soon as he or she actually becomes aware of the existence of discriminatory conditions at a public accommodation and is thereby deterred from visiting or patronizing that accommodation." *Id.* at 1218. Rather, a plaintiff has standing under the DPA only when the plaintiff "actually presented himself or herself to a business or public place with the intent of purchasing its products or utilizing its services in the manner in which those products and/or services are typically offered to the public and was actually denied equal access on a particular occasion." *Id.* at 1224. The court concluded that because the community pool was open only to registered guests, and the plaintiff had not registered or attempted to register as a guest, she lacked standing to bring discrimination claims. *Id.* at 1224–25. This conclusion suggests that the plaintiff in *Reycraft* would have had standing to sue the mobile home park if she had merely attempted to register as a guest with the intent of using its services.

Similarly, in *Osborne v. Yasmeh*, a state appellate court concluded that a plaintiff who was informed of a business's discriminatory charges when he attempted to use the business's services had standing to bring an Unruh Act claim even though he did not pay the discriminatory charge. 1 Cal.

---

[4] *Reycraft* concerns standing under section 54.3 of the California Disabled Persons Act, not the Unruh Act. 177 Cal. App. 4th at 1227 n.6. Yet, because the statutes "have significant areas of overlapping application," *id.* (quoting *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 675 (2009)), *Reycraft* applied cases dealing with Unruh Act standing, *id.* at 1221, 1224.

App. 5th 1118, 1122 (2016). *Osborne* involved four plaintiffs, including a paraplegic individual with a service dog, who attempted to rent a hotel room. *Id.* at 1121. The hotel refused to rent the plaintiffs a room unless they paid a $300 nonrefundable cleaning fee for the dog, in addition to the $80 charge for the hotel room. *Id.* After plaintiffs left without paying the fee or checking into the hotel they sued the hotel for a violation of the Unruh Act, among other things. *Id.* The hotel argued that plaintiffs lacked standing under the bright-line rule established by *Surrey*, because they failed to "tender the purchase price for a business's services or products." *Id.* at 1133 (quoting *Surrey*, 168 Cal. App. 4th at 416). *Osborne* agreed with the reasoning in *Surrey* that "a plaintiff who only learns about the defendant's allegedly discriminatory conduct, but has not personally experienced it, cannot establish standing." *Id*. But the court found "that the articulated bright-line rule in *Surrey* is not appropriate on the facts before us," *id.*, because the "tender of payment of a discriminatory fee is not required to establish standing under the Unruh Act where a disabled individual has personally experienced discriminatory treatment at a business establishment," *id.* at 1135; *see also id.* at 1122. It was enough that the plaintiffs were asked to pay the discriminatory fee; they did not need to tender payment. *Id.* at 1122, 1135.

## III

The issue that has not been resolved by these state appellate decisions — whether plaintiffs must actually patronize a business with a discriminatory policy in order to have standing to sue the business under the Unruh Act — is raised by this case.

White claims he has standing to sue Square under the rule set forth in *Reycraft* and *Osborne.* According to White, he presented himself to Square to access its products or services "in the manner in which those products and/or services are typically offered to the public," by accessing Square's website. *Reycraft*, 177 Cal. App. 4th at 1224. Further, White claims that he was actually denied equal access to Square's services when he encountered Square's seller agreement, which clearly states that its services are not available for use in bankruptcy practice. White analogizes this situation to that of a non-white person who attempts to patronize a restaurant only to find a "Whites Only" sign. *See Suttles*, 45 Cal. App. 2d at 287 (plaintiffs suffered injury when they presented tickets for admission to the racetrack, but were denied entry because of their race) (discussed in *Angelucci*, 41 Cal. 4th at 169). White contends that *Surrey*, which held that a plaintiff must "attempt to or actually subscribe to" a website and experience the discriminatory fee in order to have standing, does not apply here because Square did not charge a subscription fee. 168 Cal. App. 4th at 420. Finally, even if White could have used Square for other, non-bankruptcy purposes, White contends that he still suffered from the discriminatory policy because (1) his only purpose in using Square was to process bankruptcy transactions and (2) allowing him to use the service for only a limited purpose denies him the "full and equal" access guaranteed by the Unruh Act. Cal. Civ. Code § 51(b); *see Angelucci*, 41 Cal. 4th at 169 (discussing race-discrimination cases and explaining that plaintiffs suffered injury when they "were admitted to a movie theater or racetrack clubhouse or gained access to a soda fountain, but, because of their race, were restricted to a segregated or otherwise substandard area").

Square argues that White does not have standing under the bright-line rule set forth in *Surrey*, because White did not enroll in Square and therefore did not suffer any discriminatory act. According to Square, the seller agreement did not exclude White because it prohibits its members only from "accept[ing] payments in connection with . . . bankruptcy attorneys." White was free to join the service and use it for non-bankruptcy-related transactions. Because he did not do so, Square's policy against processing bankruptcy transactions was never "applied" to White, and as in *Surrey*, his mere awareness of a potentially discriminatory policy is insufficient to give him standing. *See Surrey*, 168 Cal. App. 4th at 418–19. In short, Square argues, White lacks standing because he opted to walk away rather than patronize the business and potentially experience the allegedly discriminatory terms.

Existing California case law does not give us clear direction for resolving this dispute. First, there is tension between California appellate courts. *Surrey* indicates that a person *must* subscribe to a business's services or purchase its products to have standing. *Id.* at 416, 420. But *Reycraft* and *Osborne* take a broader approach, requiring that plaintiffs present themselves to a business with the intent of using its products or services "in the manner in which those products and/or services are typically offered to the public," and that the business actually deny them equal access. *Reycraft,* 177 Cal. App. 4th at 1224; *see also Osborne*, 1 Cal. App. 5th

at 1133–34.[5]  The California Supreme Court has not directly addressed this inconsistency.

Second, it is not clear how the cases apply in the absence of brick and mortar to internet-based services.  For instance, *Reycraft* and *Osborne* suggest White may have standing if he presents himself to Square and is denied equal access to Square's services.  But it is not clear what steps are necessary for plaintiffs to "present themselves" to an internet-based business or to be denied equal access.  For instance, White argues that he presented himself to Square merely by visiting the website, and was denied equal access merely by reviewing the exclusionary seller agreement.  *Surrey* suggests that this would not be enough: plaintiffs who merely visit a website and discover a discriminatory fee do not have standing.  Yet it is not clear *Surrey* applies in this context, because, as White argues, Square does not impose a discriminatory fee.  Additionally, Square's seller agreement presents, on its face, an exclusionary policy that precludes a bankruptcy attorney from full and equal access to Square's services.  Questions such as these are likely to arise frequently in the future, as internet-based services become more prevalent.  We therefore need guidance from the California Supreme Court.

---

[5] This tension also appears in recent district court decisions. *Compare Abu Maisa, Inc. v. Google, Inc.*, No. 15-CV-06338-JST, 2016 WL 7178580, at \*3 (N.D. Cal. Dec. 8, 2016) (holding, under *Surrey*, that the plaintiff lacked statutory standing because it did not attempt to enroll in the defendant's service), *with Rios v. N. Y. & Co., Inc.*, No. 2:17-CV-04676-ODW(AGRX), 2017 WL 5564530, at \*4 (C.D. Cal. Nov. 16, 2017) (holding, under *Osborne*, that the plaintiff had standing under the Unruh Act, even though "Plaintiff never tendered the purchase price for any of Defendant's services or products").

The California Supreme Court's answer to these questions will be dispositive and we will follow its decision in this case. If White has not experienced Square's allegedly discriminatory policy, then he lacks statutory standing and we must affirm the district court's dismissal of his claim. But if White has experienced Square's policy, then he has statutory standing and we must vacate the district court's order and remand for the case to continue.

We therefore respectfully ask that the California Supreme Court decide the certified questions.

IV

The Clerk of Court is hereby directed to transmit forthwith to the California Supreme Court, under official seal of the Ninth Circuit, a copy of this order and request for certification and all relevant briefs and excerpts of record pursuant to California Rule of Court 8.548. Submission of this case is withdrawn, and the case will be resubmitted following receipt of the California Supreme Court's opinion on the certified questions or notification that it declines to answer the certified questions. The Clerk shall administratively close this docket pending a ruling by the California Supreme Court regarding the certified questions. The panel shall retain jurisdiction over further proceedings in this court. The parties shall notify the Clerk of this court within one week after the California Supreme Court accepts or rejects certification. In the event the California Supreme Court grants certification, the parties shall notify the Clerk within one week after the Court renders its opinion.

**QUESTION CERTIFIED; PROCEEDINGS STAYED.**