Filed 9/24/19

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| WILFERT WILLIAMS, | C086487 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201700211485CUOEGDS) |
| v. | |
| SACRAMENTO RIVER CATS BASEBALL CLUB, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge.  Affirmed.

Law Offices of Jean Schaefer and Jean Schaefer; and The Rosa Law Group and Andrea Rosa for Plaintiff and Appellant.

Murphy, Pearson, Bradley, & Feeney, William A. Munoz and Nathan T. Jackson for Defendant and Respondent.

---

\*      Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, IIB, and IIC of the discussion.

1

Plaintiff Wilfert Williams sued defendant Sacramento River Cats Baseball Club, LLC in a common law tort action for failing to hire him due to his race. His complaint also alleged discrimination under the Unruh[1] and Ralph[2] Civil Rights Acts and that defendant engaged in unfair business practices under Business and Professions Code section 17200.[3] The trial court dismissed plaintiff's complaint after sustaining defendant's demurrer. Plaintiff stipulated the dismissal be entered without leave to amend.

Defendant asserts as a threshold matter that plaintiff lacks standing in this appeal given his stipulation in the trial court was tantamount to a nonappealable consent judgment and in any event, his causes of action fail on the merits. In the unpublished portion of this opinion, we reject defendant's contention that plaintiff lacks standing to appeal but agree the trial court properly dismissed plaintiff's causes of action for discrimination under the Unruh and Ralph Civil Rights Acts and for unfair business practices.

In the published portion of this opinion, we address plaintiff's common law failure to hire claim. Central to that claim is the applicability of *Tameny*. (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 (*Tameny*).) While we agree with the parties that failing to hire a prospective employee based on race violates public policy, specifically the Government Code as well as our state Constitution, that prospective employee's remedies are grounded in the Fair Employment and Housing Act[4] (the Act). *Tameny* on

---

[1]    Civil Code section 51.

[2]    Civil Code section 51.7.

[3]    The complaint also named the office of the commissioner of baseball, doing business as Major League Baseball, and Robert Manfred, Jr., as defendants for the unfair business practices cause of action. Those defendants are not parties to this appeal.

[4]    Government Code section 12900 et seq.

2

the other hand requires "the prior existence of an employment relationship" between the parties upon which to predicate a tort duty of care.  (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 900.)  Because defendant did not owe plaintiff any duty, plaintiff cannot bring a failure to hire claim against defendant in a common law tort action and must instead proceed under the Act.  Accordingly, we affirm the judgment of dismissal.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Factual Allegations*

From April 2014 through July 2015, plaintiff catered meals to the visiting and home team players at Raley Field, home of defendant's minor league baseball team.  He was hired by the visitor clubhouse manager, Wayne Brown, and the home clubhouse manager to do so.  He also helped Brown with meal preparation during that time.  While assisting Brown, the job of assistant visitor clubhouse manager became available and plaintiff applied for the job.  Brown recommended plaintiff to both defendant's human resources director and to the baseball operations and public relations coordinator, Daniel Emmons.  Plaintiff was never interviewed for the position even though he was already performing some of the tasks of assistant clubhouse manager and had experience running his own catering business.  Instead, defendant hired a Caucasian teenager who was still in high school and did not meet any of the qualifications for the job.

In June 2015, while plaintiff helped Brown in the visitor clubhouse as Brown's guest, plaintiff witnessed a visiting team's trainer and coach berate, intimidate, assault, and swear at Brown, who is African American, "as if he were a slave or servant, not an employee."  "Plaintiff could do nothing but stand by and endure the harassing conduct, based on the threat that either [the trainer] or [the coach] would turn their wrath on him, the only other African American present."  Emmons was present and observed the

3

harassing conduct but failed to stop it and appeared to condone the conduct by siding with the visiting trainer and coach.

## II

### *Legal Proceedings*

Plaintiff's operative complaint alleged three causes of action. The first was a common law tort action for "Failure to Hire" based on "Race Discrimination in Violation of Public Policy" as articulated by the Act under Government Code section 12940, subdivision (a), which prohibits prospective employers from refusing to hire individuals based on race. The second cause of action was for violation of the Unruh and Ralph Civil Rights Acts based on the conduct of the visiting trainer and coach while plaintiff was in the visiting clubhouse with Brown. The third cause of action was for unfair business practices based on defendant's conduct of underpaying Brown, who in turn had to underpay plaintiff for his catering work, which served to transfer costs so defendant could spend money otherwise earmarked for the visiting clubhouse on other operations. This conduct, plaintiff alleged, provided defendant with an unfair competitive advantage and with illegal profits.

Defendant demurred to the operative complaint arguing plaintiff's first cause of action failed because California law does not recognize a cause of action for failure to hire in violation of public policy. The second cause of action failed, defendant argued, because the conduct plaintiff complains of was not prohibited by the Ralph Civil Rights Act and also because the Unruh Civil Rights Act did not recognize " 'environmental' " claims, where the complained of conduct is directed at someone other than the complaining party. As to the third cause of action, defendant argued plaintiff failed to allege an injury in fact or a causal relationship between its conduct and plaintiff's harm. Defendant further argued that, to the extent plaintiff's claim was derivative of his first cause of action, it failed because plaintiff's first cause of action was meritless.

4

The trial court issued a tentative ruling sustaining defendant's demurrer as to all causes of action. In its reasoning, the court stated the demurrer was sustained with leave to amend; however, the court's ruling provides: "Parties stipulated and the Court accepted that the Demurrer to the [operative] Complaint be sustained WITHOUT leave to amend." When making its decision to sustain the demurrer, the court reasoned plaintiff did not state a cause of action for failure to hire because California does not recognize a common law cause of action for failure to hire in violation of public policy. Further, to the extent plaintiff alleged a statutory claim under the Act, he failed to do so because he failed to allege he exhausted his administrative remedies. As to plaintiff's second cause of action, the court found he did not state a cause of action under the Unruh Civil Rights Act because he failed to allege that he was the victim of the discriminatory conduct. This cause of action also failed under the Ralph Civil Rights Act because plaintiff did not allege he was the victim of violence. Finally, plaintiff failed to state a cause of action for unfair business practices because plaintiff did not show he was defendant's employee or that he was directly injured by defendant. Further, the cause of action failed as a derivative claim of plaintiff's *Tameny* cause of action because that cause of action failed as well.

The judgment of dismissal provides that "The Court, having sustained [defendant's] demurrer to all causes of action alleged in [plaintiff's complaint] without leave to amend, based on a stipulation of the Parties, hereby" dismisses the case in its entirety. As a result, plaintiff's entire case was dismissed.

Plaintiff appeals.

DISCUSSION

I

*Plaintiff Has Standing To Appeal*

As a preliminary matter, defendant urges us to dismiss plaintiff's appeal arguing it is the product of a nonappealable consent judgment because plaintiff requested the trial

5

court sustain the demurrer without leave to amend when the court was willing to grant plaintiff leave to amend. We disagree.

" "It is an elementary and fundamental rule of appellate procedure that a judgment or order will not be disturbed on an appeal prosecuted by a party who consented to it.' " (*Brooms v. Brooms* (1957) 151 Cal.App.2d 351, 352.) Similarly, if a party stipulates to a demurrer without leave to amend and judgment is subsequently entered upon that stipulation, that party may not then appeal the adverse judgment. (*Linder v. Russian Health Baths* (1955) 131 Cal.App.2d 621, 621-622; *Christina v. R. Z. Adams Co., Inc.* (1936) 16 Cal.App.2d 139, 140.) An exception to this rule exists, however, when the dismissal is made solely for the purpose of expediting an appeal. (*Building Industry Assn. v. City of Camarillo* (1986) 41 Cal.3d 810, 817; *Flowers v. Prasad* (2015) 238 Cal.App.4th 930, 936, & fn. 3.)

Defendant concedes plaintiff did not stipulate to the demurrer itself and instead stipulated that leave to amend be denied. Indeed, the court's order sustaining defendant's demurrer makes clear that the demurrer was not a consent judgment but the product of the court's analysis of highly contested issues. In fact, the order grants leave to amend throughout the analysis and indicates leave to amend was denied by stipulation only once it provided its ruling. This indicates the denial of leave to amend, and thus the dismissal, was not for the purpose of resolving the case but instead to expedite an appeal. While, plaintiff did not designate the reporter's transcript on appeal and we cannot examine it to corroborate the trial court's order and judgment, the record as it stands is sufficient for us to conclude the judgment was entered as a means to hasten appeal and not to fully and finally settle the dispute.

Defendant's attempt to distinguish this case from *Norgart* is unavailing. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383.) There, our Supreme Court concluded it had jurisdiction over an appeal when the stipulation indicated both parties agreed to dismissal to expedite an appeal. (*Id.* at pp. 401-402.) The stipulation provided that both parties

6

were free to " 'assert the same legal arguments and objections before the Court of Appeal as were made' " in the trial court. (*Id*. at p. 394.) While the stipulation here does not provide as detailed a recitation as that in *Norgart*, our Supreme Court did not indicate that such a recitation was necessary. Instead, it confirmed the exception to the long-held rule defendant seeks to prevail upon and stated, " 'Although a consent . . . judgment is not normally appealable, an exception is recognized when "consent was merely given to facilitate an appeal following adverse determination of a critical issue." ' [Citation.] For, in the words of *Building Industry Assn.* itself, 'it is "wasteful of trial court time" to require the plaintiff to undergo [further court proceedings] merely to obtain an appealable judgment.' " (*Id*. at p. 400.) It held that on the record before it, " 'consent was given only *pro forma* to facilitate an appeal, and with the understanding' on the part of [both parties and the trial court], that the [losing party] 'did not thereby intend to abandon [its] right to be heard on the appeal in opposition to the judgment [and] order.' " (*Id.* at p. 402.) The court confined its analysis to the record to determine the understanding of the parties, it did not announce that specific language or procedures were required for a party to reserve its appellate rights after receiving an adverse ruling. (*Ibid.*)

Defendant concedes plaintiff did not stipulate to the demurrer, thus it understood that plaintiff did not consent to the outcome that his suit be dismissed. Further, the trial court performed an in-depth analysis of the merits of plaintiff's claims, indicating it too understood plaintiff not to stipulate to dismissal. Given this record, "[w]e should 'construe the stipulation according to the intention and understanding of the parties at the time, and give it effect accordingly.' " (*Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at p. 402.) Accordingly, plaintiff has standing to appeal the dismissal of his suit.

## II

### *Demurrer Standard Of Review*

A demurrer tests the legal sufficiency of factual allegations in a complaint. (*Title Ins. Co. v. Comerica Bank -- California* (1994) 27 Cal.App.4th 800, 807.) We review de

novo the dismissal of a civil action after a demurrer is sustained without leave to amend. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879.) In doing so, "we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Ibid.*) "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Ibid.*) We will affirm if any proper ground for sustaining the demurrer exists. (*Cantu*, at p. 880, fn. 10.)

On appeal, a plaintiff bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) To establish that a cause of action has been adequately pled, a plaintiff must demonstrate he or she has alleged "facts sufficient to establish *every element of that cause of action.*" (*Cantu v. Resolution Trust Corp.*, *supra*, 4 Cal.App.4th at p. 879.) If the complaint fails to plead, or if the defendant negates, any essential element of a particular cause of action, this court should affirm the sustaining of a demurrer. (*Id.* at p. 880.)

A

*Plaintiff Failed To State A Cause Of Action Under Tameny*

Plaintiff contends the trial court erred by sustaining defendant's demurrer to his failure to hire cause of action because the reasoning of *Tameny*, recognizing a tort action for wrongful termination in violation of public policy, extends to failure to hire claims. We disagree.

In *Tameny*, the plaintiff alleged his former employer had discharged him because he refused to participate in an illegal scheme to fix retail gasoline prices. (*Tameny*, *supra*, 27 Cal.3d at p. 169.) Our Supreme Court held these allegations supported a tort action for wrongful discharge. (*Id.* at p. 178.) In doing so, it concluded that an employer's obligation to refrain from discharging an employee who refuses to commit a

8

criminal act does not depend on any express or implied promises set forth in the employment contract, but rather reflects a duty imposed by law on all employers in order to implement the fundamental public policy embodied in the penal statutes. (*Id*. at p. 176.) Thus, " 'where the employer's motivation for [a] discharge contravenes some substantial public policy principle, then the employer may be held liable to the employee for damages . . . .' " (*Id*. at p. 177.)

Following *Tameny*, our Supreme Court provided guidance in *Stevenson* on how to determine whether an employer's conduct contravened a substantial public policy giving rise to a wrongful termination cause of action. (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 894 [A tortious discharge claim requires that the employee be discharged in violation of a policy that is: "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental"].) It is upon the factors announced in *Stevenson* that plaintiff focuses his argument. Defendant, however, concedes that failing to hire a prospective employee based on race violates public policy, and we agree. (See Cal. Const., art. I, § 8 ["A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin"]; see also Gov. Code, § 12940, subd. (a).) Instead, it focuses on the relationship between the parties and whether an employment relationship existed giving rise to a duty not to violate public policy. We find defendant's inquiry much more relevant to the issue presented in this case.

We note our Supreme Court concluded in *Tameny* that the duty to comport with "fundamental public policies embodied in the state's penal statutes" applied to "all employers," which taken in isolation seems to apply the duty to those offering employment. (*Tameny*, *supra*, 27 Cal.3d at p. 176.) The reasoning underlying this conclusion, however, makes clear the employer's duty is owed to their employees after

9

having entered an employer-employee relationship.  Our Supreme Court characterized the duty as ex delicto, meaning it evolved "*from a breach of duty growing out of the contract . . . .*"  (*Ibid.*)  In saying so, the court relied on *Sloane*, one of the original California cases recognizing that a wrongful act committed in the course of a contractual relationship gives rise to both tort and contractual relief.  (*Tameny*, at pp. 175-176.)  In *Sloane*, our Supreme Court held a plaintiff who was wrongfully ejected from a train before her destination "could either bring an action simply for the breach of contract, or she could sue . . . in tort for [defendant's] violation of the duty . . . which it assumed upon entering into such a contract."  (*Sloane v. Southern Cal. Ry. Co.* (1896) 111 Cal. 668, 677.)

Moreover, our Supreme Court in *Miklosy*, a case involving wrongful termination claims against the University of California and the employees' supervisors, stated that as it pertained to the supervisors, "Plaintiffs . . . overlook the fact that a *Tameny* action for wrongful discharge can only be asserted against *an employer*. . . .  This conclusion flows logically from our reasoning in *Tameny*.  [¶]  The tort we recognized in *Tameny*, and reaffirmed in *Gantt*, is premised on the wrongful termination of an employment relationship.  If an employer terminates an employment relationship for a reason that contravenes some fundamental public policy, then the employer breaches a general duty imposed by law upon all employers and the employee's remedy therefore sounds in tort.  [Citation.]  In that case, the various terms of the employment relationship are not the source of the employee's legal rights; rather, tort law is the source of the employee's legal rights, and the employment relationship is merely the medium through which the tort is inflicted.  [Citation.]  Nevertheless, the breach of the employment relationship is an indispensable element of the tort, because it serves factually as the instrument of injury.  Thus, there can be no *Tameny* cause of action without the prior existence of an employment relationship between the parties."  (*Miklosy v. Regents of University of California*, *supra*, 44 Cal.4th at p. 900, italics omitted.)

Subsequent cases have complied with this basic principle and declined to extend *Tameny* claims to independent contractors (see *Sistare-Meyer v. Young Men's Christian Assn.* (1997) 58 Cal.App.4th 10, 14, 16-17; *Harris v. Atlantic Richfield Co.* (1993) 14 Cal.App.4th 70, 75, 80-82; *Abrahamson v. NME Hospitals, Inc.* (1987) 195 Cal.App.3d 1325, 1328-1329), and those seeking renewal of employment contracts (see *Touchstone Television Productions v. Superior Court* (2012) 208 Cal.App.4th 676, 678, 682; *Daly v. Exxon Corp.* (1997) 55 Cal.App.4th 39, 45). Similarly, courts have recognized the claim's applicability to employees who have experienced adverse employment actions, such as demotions or suspensions. (See *Andersen v. Pacific Bell* (1988) 204 Cal.App.3d 277, 283; *Garcia v. Rockwell Internat. Corp.* (1986) 187 Cal.App.3d 1556, 1562, abrogated on other grounds in *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1093.)

Thus, before we can determine whether a duty was breached per the *Stevenson* factors, we must first determine whether a duty was owed. To do so, we must determine whether plaintiff was defendant's employee. (*Miklosy v. Regents of University of California*, *supra*, 44 Cal.4th at p. 900.) Plaintiff does not argue he was defendant's employee but concedes he was a job applicant. Because plaintiff was not an employee, defendant did not owe him a duty; thus, plaintiff's *Tameny* claim must fail.

This does not mean that plaintiff is without recourse. Not only does it violate public policy to fail to hire a prospective employee based on race, it violates the law. (Cal. Const., art. I, § 8; Gov. Code, § 12940, subd. (a).) The employer, however, has not committed a tort against the prospective employee because it owed no duty to that person. (*Miklosy v. Regents of University of California*, *supra*, 44 Cal.4th at p. 900.) Instead, plaintiff must proceed under the Act, which provides a statutory cause of action. (Gov. Code, § 12940.)

Accordingly, the trial court properly sustained defendant's demurrer to the first cause of action.

B

*Plaintiff Failed To State A Cause Of Action Under*

*The Unruh And Ralph Civil Rights Acts*

Plaintiff contends the trial court erred by dismissing his cause of action under the Unruh and Ralph Civil Rights Acts. He argues witnessing the visiting coach's and trainer's treatment of Brown in the visiting clubhouse in front of Emmons, defendant's supervising employee, violated both acts. Defendant argues his claim must fail under the Unruh Civil Rights Act because he was not the direct victim of the conduct and under the Ralph Civil Rights Act because he did not allege the aggressors committed or threatened to commit a violent act. We agree with defendant.

1

*Unruh Civil Rights Act*

The Unruh Civil Rights Act provides in pertinent part: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).) "[T]he state Legislature has specifically conferred standing to sue under the Unruh [Civil Rights Act] upon the victims of the discriminatory practices . . . ." (*Midpeninsula Citizens for Fair Housing v. Westwood Investors* (1990) 221 Cal.App.3d 1377, 1386.) Thus, a plaintiff must allege that his or her civil rights were personally violated. (*Id.* at p. 1384.) A plaintiff who alleges mere knowledge or awareness of discriminatory conduct lacks standing. (*Surrey v. TrueBeginnings, LLC* (2008) 168 Cal.App.4th 414, 419-420.)

In *Osborne*, the court held that a plaintiff has standing under the Unruh Civil Rights Act "as long as the plaintiff alleges facts showing that he or she has directly experienced a denial of rights as defined [under that act]. In addition, when a[n] . . . individual has standing to sue under [the Unruh Civil Rights Act], any person 'associated

12

with' that individual [citation] has standing if the associated person has also directly experienced the discriminatory conduct." (*Osborne v. Yasmeh* (2016) 1 Cal.App.5th 1118, 1122.)

*Osborne* involved four plaintiffs, including a paraplegic individual with a service dog, who attempted to rent a hotel room. (*Osborne v. Yasmeh*, *supra*, 1 Cal.App.5th at p. 1121.) The hotel refused to rent the plaintiffs a room unless they paid a $300 nonrefundable cleaning fee for the dog, in addition to the $80 charge for the hotel room. After plaintiffs left without paying the fee or checking into the hotel they sued the hotel for a violation of the Unruh Civil Rights Act. (*Ibid.*) The *Osborne* court held that it was enough the paraplegic individual and his family were asked to pay the discriminatory fee to confer standing upon them. (*Id*. at p. 1122.) Indeed, "[t]he history of the Unruh Civil Rights Act and the cases interpreting it make clear that when a person presents himself or herself to a business establishment, and is personally discriminated against based on one of the characteristics articulated in [Civil Code] section 51, he or she has suffered a discriminatory act and therefore has standing under the Unruh Civil Rights Act. And when such discrimination occurs, a person has standing under [Civil Code] section 51.5 if he or she is 'associated with' the [person discriminated against] and has also personally experienced the discrimination." (*Osborne*, at pp. 1133-1134.)

Plaintiff's complaint alleged that Brown was berated, intimidated, assaulted, and sworn at by a visiting coach and trainer "as if he were a slave or servant, not an employee" while Emmons was present to witness it. It further alleged that "[p]laintiff could do nothing but stand by and endure the harassing conduct, based on the threat that either [the trainer] or [the coach] would turn their wrath on him, the only other African American present." The complaint did not allege that any of this conduct was directed at plaintiff only that he witnessed it being directed at Brown. It further did not allege that plaintiff was treated differently in any way because of his association with Brown, only that he was made to witness the conduct. Because plaintiff's complaint did not allege

13

personal discrimination or discrimination by association, he has failed to state a cause of action under the Unruh Civil Rights Act. Because we conclude defendant's demurrer was properly sustained on this ground, we need not determine whether defendant's other arguments regarding the failings of plaintiff's pleading pertinent to the Unruh Civil Rights Act have merit.

2

*Ralph Civil Rights Act*

" 'The Legislature's focused effort to combat discriminatory and pernicious conduct often referred to as hate crimes began with the 1976 enactment of Civil Code section 51.7, commonly referred to as the "Ralph Civil Rights Act" or the "Ralph Act." ' [Citation.] The Ralph Act broadly provides that all persons 'have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property' because of, among other things, the person's race, religion, national origin, sex, sexual orientation, or position in a labor dispute." (*Saheli v. White Memorial Medical Center* (2018) 21 Cal.App.5th 308, 321.) "[A] plaintiff must establish the defendant threatened or committed violent acts against the plaintiff or [his or her] property, and a motivating reason for doing so was a prohibited discriminatory motive . . . ." (*Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268, 1291.) " '[T]he plain meaning of the word "violence" ' . . . 'clearly involves some physical, destructive act.' " (*Campbell v. Feld Entertainment, Inc.* (N.D.Cal. 2014) 75 F.Supp.3d 1193, 1205, 1208 [throwing sticks at activist's camera atop a wall not violence where one of the sticks ricocheted off a pillar and hit the activist standing behind the wall].)

Plaintiff's complaint did not allege any specific violent conduct directed at him or even Brown. Instead, plaintiff uses the vague terms of berated, assaulted, and intimidated to describe the visiting team coach's and trainer's conduct, and gives us no clue as to what occurred in the visitor clubhouse, let alone whether it constituted violence. Further, plaintiff's complaint is silent as to whether any conduct on behalf of the visiting coach

14

and trainer was physical in nature. Given the vagueness of plaintiff's complaint, he has failed to state a cause of action under the Ralph Civil Rights Act.

C

*Plaintiff Failed To State A Cause Of Action For Unfair Business Practices*

Plaintiff contends he stated a cause of action for unfair business practices because he suffered economic loss when defendant violated the Act by failing to hire him based on his race. The problem with plaintiff's argument is that this was not the basis for the unfair business practices claim contained in his complaint and argued to the trial court. His complaint alleged defendant reaped illegal profits by underpaying Brown who in turn had to underpay him for his catering services.[5] While plaintiff would ordinarily be able to argue for amendment as he appears to do in his appellate briefing, he stipulated that leave to amend be denied, preferring instead to proceed to appeal on the facts as alleged in the complaint. "The failure to amend and state a cause of action against defendant is an admission that plaintiff has stated the case as strongly as he can and there are no facts that could be alleged to cure the defect." (*Cano v. Glover* (2006) 143 Cal.App.4th 326, 330.) Thus, plaintiff forfeited his argument that the unfair business practices cause of action could rest on the River Cat's violation of the Act.

Plaintiff does not argue on appeal that the facts as stated in the complaint are sufficient to state a cause of action, except to say the trial court erred by rejecting his *Tameny* cause of action as the basis for the unfair business practices cause of action. As discussed, plaintiff cannot bring a failure to hire cause of action under *Tameny*; thus, his derivative unfair business practices cause of action must also fail because plaintiff has not identified any unlawful, unfair, or fraudulent conduct. (See *AMN Healthcare, Inc. v. Aya*

---

[5]     The complaint does not appear to allege plaintiff's *Tameny* cause of action provided the basis for the unfair business practices cause of action; however, the trial court found that to the extent plaintiff made such an argument, it failed for the same reasons his *Tameny* cause of action failed.

*Healthcare Services, Inc.* (2018) 28 Cal.App.5th 923, 950 ["Because all of AMN's other claims fail as a matter of law, as discussed *ante*, so too must its derivative [unfair business practices] claim"].) Accordingly, the trial court properly sustained defendant's demurrer to the third cause of action.

DISPOSITION

The judgment is affirmed. Defendant is awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

/s/ 

Robie, J.

We concur:

/s/ 

Blease, Acting P. J.

/s/ 

Krause, J.